COMMONWEALTH *vs.* LUIS VAZQUEZ.

No. 04-P-814.

Bristol. June 15, 2005. - December 19, 2005.

Present: BERRY, DOERFER, & COHEN, JJ.

*Indecent Assault and Battery. Practice, Criminal,* Argument by prosecutor.

A District Court judge did not err in denying a criminal defendant's motion
for a required finding of not guilty on a complaint charging indecent as-
sault and battery on a child under fourteen years of age, in violation of
G. L. c. 265, § 13B, in circumstances where the jury reasonably could
infer from the evidence that the defendant's kiss on the victim's mouth
was part of a pattern of the defendant's sexually aggressive behavior
toward his wife's adolescent niece on occasions when he was alone with
her at his home and not, as the defendant alleged, simply an accident or an
innocent expression of avuncular affection. [306-310]

At the trial of a criminal complaint charging two counts of indecent assault
and battery, the prosecutor's closing argument, which offered a sweeping
rationale for the complainants' delay in making their allegations that was
not supported by the evidence, interjected a particularly inflammatory col-
lateral matter into the jury's consideration of the case, misstated a critical
fact, and inappropriately shifted the burden of proof to the defendant, cre-
ated a substantial risk of a miscarriage of justice that was not ameliorated
by the judge's final charge to the jury and required reversal of the
defendant's convictions. [310-314]

COMPLAINT received and sworn to in the Fall River Division of
the District Court Department on January 23, 2002.

The case was tried before *Deborah A. Dunn,* J.

*Elizabeth Doherty* for the defendant.

*Kevin Connelly,* Assistant District Attorney (*Jennifer Rose,*
Assistant District Attorney, with him) for the Commonwealth.

COHEN, J. In March, 2004, after a jury trial in the Fall River
Division of the District Court Department, the defendant was
found guilty of indecent assault and battery on a person fourteen
years of age or over, in violation of G. L. c. 265, § 13H, and
indecent assault and battery on a child under fourteen years of

age, in violation of G. L. c. 265, § 13B. The charges stemmed from separate incidents alleged by two of his wife's nieces, Susan and Kathy,[1] ages fifteen and twelve, respectively, at the time of the incidents.

On appeal, the defendant raises two issues that require discussion. He contends that his motion for a required finding of not guilty on the charge involving Kathy should have been allowed,[2] because the conduct relied upon by the Commonwealth — a brief kiss on Kathy's mouth involving the defendant's partially open mouth, but not his tongue — did not meet the legal standard for indecency. He also contends that his convictions must be reversed because the prosecutor's closing argument was repeatedly and egregiously improper.

We conclude that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to prove the charge of indecent assault and battery upon Kathy, because, in the circumstances, the defendant's placement of his open mouth upon his niece's lips could be found to be an indecent act. Nevertheless, we are constrained to reverse the defendant's convictions, because serious improprieties in the prosecutor's closing argument, while not the subject of objection, created a substantial risk of a miscarriage of justice.

1. *Sufficiency of proof of indecency.* To establish a violation of G. L. c. 265, § 13B, the Commonwealth was required to prove beyond a reasonable doubt that the defendant committed an intentional, unprivileged, and indecent touching of a child. *Commonwealth* v. *Taylor,* 50 Mass. App. Ct. 901, 901 (2000). "A touching is indecent when, judged by the 'normative standard' of societal mores, it is 'violative of social and behavioral expectations,' *Commonwealth* v. *Gallant,* 373 Mass. 577, 580-581, 589 (1977), in a manner 'which [is] fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper.' " *Commonwealth* v. *Lavigne,* 42 Mass. App. Ct. 313, 314-315 (1997), quoting from *Commonwealth* v. *Mosby,* 30 Mass. App. Ct. 181, 184 (1991). When evaluating evidence

---

[1]Pseudonyms.

[2]He does not challenge the sufficiency of the evidence as to the charge involving Susan.

of alleged indecent behavior, we consider all of the attendant circumstances. See *Commonwealth* v. *Lavigne, supra* at 316. See also *Commonwealth* v. *Rosa,* 62 Mass. App. Ct. 622, 626 (2004).

The touching in question need not be restricted to the list of anatomical parts and areas referred to in *Commonwealth* v. *Mosby, supra* at 184. *Commonwealth* v. *Castillo,* 55 Mass. App. Ct. 563, 566 (2002). In certain circumstances, the touching of other intimate parts — including the mouth and its interior — may violate contemporary views of personal integrity and privacy. *Commonwealth* v. *Rosa, supra* at 625. Thus, an unwanted kiss on the mouth has been held to constitute indecent conduct, at least in circumstances involving the forced insertion of the tongue, when coupled with surreptitiousness and a considerable disparity in age and authority between the perpetrator and the victim. *Commonwealth* v. *Castillo, supra* at 566-567 & n.2. We do not read our cases, however, as requiring that there always be tongue involvement for an act that might be characterized as a kiss to be found indecent, as other facts and circumstances may allow the trier of fact rationally to determine that the kiss was an indecent act. In the over-all context and circumstances presented by this case, we think that the jury reasonably could conclude that the kiss on Kathy's mouth was indecent.

We summarize the relevant evidence in the light most favorable to the Commonwealth. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). In late 2000 and early 2001, the defendant, his wife, Maria, and four of Maria's five children (three boys and a girl) lived in a two-story apartment in Fall River. The apartment was frequently visited by Maria's nieces, Susan and Kathy.

The incident involving Kathy took place one afternoon in December, 2000, or early January, 2001, when Kathy stopped at her aunt's apartment after school. Maria was not there, but Kathy stayed and watched television alone in the living room. Eventually, the defendant came in and sat down next to her. About half an hour later, the defendant got up and asked for a "good-bye kiss."

It was common for members of the family to give each other

hello and good-bye kisses. Typically, the defendant would kiss Kathy on the cheek if there were other people around, but would kiss her on the lips if they were alone. On this occasion, when Kathy attempted to give the defendant a kiss on the cheek, he turned his head and their lips touched. Kathy's mouth was closed, but the defendant's mouth was "kind of open." Kathy did not feel his tongue but could feel the inside of his mouth "a little." She described the kiss as lasting two seconds, which was longer than the defendant's usual peck on the cheek. Afterwards, she said nothing to the defendant, who then left the house. The episode left Kathy feeling uncomfortable and "disgusting." Thereafter, Kathy tried to avoid the defendant, although she still came to visit her aunt and her cousins.

The episode with Susan involved more serious allegations. Like Kathy, Susan was very close to her aunt. She often babysat for her cousins and, occasionally, would stay overnight. At around the same time as the incident involving Kathy — sometime between December, 2000, and February, 2001 — Susan came over to spend the night so that she would be available to babysit when Maria went to work at 4 A.M. That evening, at a time when Maria was out of the house for a while, Susan left the children downstairs and went upstairs to take a shower.

After Susan came out of the bathroom, the defendant called to her from his bedroom, where he was sitting on the corner of the bed. When she entered the bedroom, the defendant grabbed her arm, pulled her toward him, and kissed her, trying to insert his tongue in her mouth. Susan's mouth was closed, but she felt his mouth and tongue on her lips for a few minutes. Although Susan told him to stop, and tried to push him away, the defendant put his hands underneath her shirt and bra and touched one of her breasts for a couple of minutes. Then he put his hands down the front of her pants and reached into her underwear where he touched (but did not penetrate) her "private area" for about a minute. Susan kept telling the defendant to stop and eventually was able to get away from him.

Susan did not say anything about this incident to her cousins, but in an effort to avoid the defendant, she took the youngest child (a little girl) into the bedroom occupied by the three boys, and they all spent the night together in the boys' room. Early in

the morning, after Maria had left for work, the defendant came into the boys' room, woke up Susan, and again asked her to go into his bedroom. She refused and left the house later that morning.

Focusing solely upon the evidence of the episode with Kathy, the defendant contends that a finding of indecency was not warranted. We agree that in most situations it would not be appropriate to criminalize a brief kiss on the mouth that did not involve the insertion or attempted insertion of the tongue. In this case, however, we think that the kiss could be viewed as having improper, sexual overtones, "violative of social and behavioral expectations." *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. at 314, quoting from *Commonwealth* v. *Gallant*, 373 Mass. at 589. This conclusion is supported by the age difference between the defendant (who was in his thirties) and Kathy (who was only twelve), and his position of familial authority over her when he asked her for the kiss, as well as from the evidence that he turned his head to meet Kathy's lips with his mouth open to an extent that Kathy could feel its interior, that the kiss lasted longer than the usual peck on the cheek, and that the defendant behaved surreptitiously, as shown by his practice of kissing Kathy on the lips when they were alone, but on the cheek when there were other family members present. See *Commonwealth* v. *Castillo*, 55 Mass. App. Ct. at 567.

Even if we accept the defendant's position that the evidence of his behavior toward Kathy, standing alone, was fatally ambiguous given the family's practice of routinely exchanging kisses, additional context was provided by the evidence of the defendant's similar, but more aggressive, behavior toward Susan in or around the same time period.[3] When this additional

---

[3]The defendant does not argue that the charges should not have been joined for trial. See Mass.R.Crim.P. 9(a)(1) and (3), 378 Mass. 859 (1979); *Commonwealth* v. *Pillai*, 445 Mass. 175, 179-183 (2005). Nor does he claim error in the absence of an instruction limiting the purposes for which the evidence of the two incidents was cross-admissible. Since joinder of related offenses carries the risk that the jury may draw the forbidden inference of propensity, "[t]he better practice is to give an appropriate instruction in these circumstances." *Id.* at 184. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 263 (2005) (potential prejudice from joinder of related charges involving four victims offset by instruction that indictments were to be considered separately

evidence is figured into the analysis, we think that the jury reasonably could infer that the defendant's kiss on Kathy's mouth was part of a pattern of sexually aggressive behavior toward his wife's adolescent nieces on occasions when he was alone with them at his home, and not, as the defendant would have it, simply an accident or an innocent expression of avuncular affection. See *Commonwealth* v. *King*, 387 Mass. 464, 472 (1982); *Commonwealth* v. *Pillai*, 445 Mass. 175, 180-181 (2005); *Commonwealth* v. *Lanning*, 32 Mass. App. Ct. 279, 282-283 (1992). Accordingly, there was no error in denying the defendant's motion for a required finding of not guilty on the charge of indecent assault and battery against Kathy.

2. *Closing argument.* To place the prosecutor's closing argument into perspective, it is necessary to make some additional observations about the case and how it was defended. Despite the fact that the evidence was sufficient to allow both charges to go to the jury, the evidence of the defendant's guilt was not overwhelming. As is often true in sexual abuse cases, the outcome turned upon credibility. No part of either incident was witnessed by any third party, and there was no corroborating physical evidence.

From the perspective of the defense, the focal issues at trial were the complainants' delay in making their allegations and whether they had a motive to fabricate them. The evidence established that the girls came forward approximately a year after the alleged incidents, telling their mother on successive days in December, 2001, about their experiences with the defendant. A few weeks later, after their mother consulted another one of her sisters, a social worker, the girls' allegations were brought to the attention of the police. Meanwhile, in the summer of 2001, the defendant, Maria, and Maria's children had moved to Florida, much to the disappointment of the other members of Maria's extended family, who blamed the defendant for instigating the move. It was the defendant's position that Kathy and Susan had come forward with baseless accusations

and that evidence of other crimes could be considered solely on issues of defendant's intent, motive, state of mind, or plan).

in an effort to secure the return of their aunt, who was seriously ill and sorely missed.[4]

Kathy and Susan both testified that the reason they did not disclose the assaults earlier was to preserve family harmony. Kathy stated that she wanted to avoid a family argument that could result in Maria becoming angry with her; Susan expressed her wish to protect the close relationship between her mother and Maria. Neither girl testified that she was dissuaded from coming forward because of embarrassment or humiliation, and no expert testimony was offered by the Commonwealth to support such a rationale for the delay. See and compare *Commonwealth* v. *Dockham*, 405 Mass. 618, 628-629 (1989). Nevertheless, in closing argument, the prosecutor made the following comments, while reviewing the incident involving Kathy:

> "[J]ust because she didn't go and scream and go tell everyone doesn't mean it didn't happen. This is a young child who's suffering a humiliating experience. And we know because we see it in the news every single day, on the radio, in the newspaper, on TV, the whole church scandal. People who are waiting years to disclose what happened to them, sometimes so far out it's beyond the statute of limitations. It is a very natural thing to not immediately disclose being a victim of a sexual assault, and that's because it is so private. It is so humiliating."

This argument overstepped the bounds of appropriate advocacy. Not only did the prosecutor offer a sweeping rationale for late disclosure that was not supported by the evidence presented at trial, see *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 263 (2002), but she did so by interjecting an impermissible, inflammatory element into the jury's consideration of the case. See *Commonwealth* v. *Santiago*, 425 Mass.

---

[4]According to the testimony of Maria's sister (the complainants' mother), Maria did not believe the accusations against the defendant. One week before trial, the defendant unsuccessfully requested a continuance so that Maria, who was undergoing treatment for cancer and was unable to travel, could attend the trial and testify on his behalf. The defendant contends that Maria's presence would have been very helpful to his defense and that the denial of the motion to continue was an abuse of discretion. Because we reverse on other grounds, we need not consider the issue.

491, 494-495 (1997). She invoked a highly charged collateral matter — the church sex abuse scandal — which involved vast numbers of child victims and engendered extraordinary public outrage, and then, by referring to delays beyond the statute of limitations, she conveyed the idea that worthy cases may founder on the shoals of late disclosure, with negative consequences for both victims and our system of justice. "Arguments aimed at arousing the passions or sympathies of the jury are the paradigm example of prosecutorial misconduct during closing argument. Such arguments distract juries from their true fact-finding function and are highly improper." Lawless, Prosecutorial Misconduct § 9.21 (3d ed. 2003).

The church scandal reference was not the only serious impropriety in the prosecutor's closing argument. She also misstated a critical fact — the length of the kiss on Kathy's mouth. Although Kathy's testimony was that the kiss lasted for "two seconds," the prosecutor argued that the defendant "was the one who caused the lip to lip touch, that it lingered there more than a minute." Later, she argued that "[h]e lingered there. He stayed on her mouth." These were significant overstatements.

In yet another portion of the argument, the prosecutor may have suggested to the jury that it was the defendant's burden to disprove his guilt, stating: "This is his case to win or lose." Finally, she ended her remarks with the exhortation, "You *need* to find him guilty" (emphasis added), thereby suggesting to the jury that it was their duty to convict. See *Commonwealth* v. *Deloney*, 59 Mass. App. Ct. 47, 53 (2003).

The question remains whether these prosecutorial errors are grounds for reversal. Because defense counsel raised no objection, we consider only whether the improper remarks created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-295 (2002).[5] We look at the cumulative effect of all the errors in the context of the entire argument and the case as a whole. *Commonwealth* v. *Santiago*, *supra* at 500.

---

[5]This is the applicable standard of review whether we view the issue as arising from unpreserved error or, as the defendant argues in the alternative, ineffective assistance of trial counsel in failing to object. *Commonwealth* v. *Randolph*, *supra* at 295-296.

The Commonwealth minimizes the likely impact of the reference to the church scandal, arguing that it was a matter of common knowledge and merely provided "an example, to which the jury might readily relate, of the delayed disclosures of sexual abuse." Asking the jury to draw conclusions about a significant issue in the case by using the church scandal as an example was, however, precisely the problem — particularly given the venue of the defendant's trial. The records of this court reflect that when this case was tried in District Court in Fall River in mid-March, 2004, a petition pursuant to G. L. c. 123A, § 12, for the civil commitment of former priest James Porter was pending in Superior Court in Bristol County, the probable cause hearing to be held the following month.[6] From these court records, see *Camara* v. *Board of Appeals of Tewksbury*, 40 Mass. App. Ct. 209, 211 (1996); *Commonwealth* v. *Thurston*, 53 Mass. App. 548, 554 (2002), as well as from our general knowledge, see *Matter of Pappas*, 358 Mass. 604, 607 (1971), aff'd sub nom. *Branzburg* v. *Hayes*, 408 U.S. 665 (1972), we are able to take judicial notice of the fact that the Porter case placed Fall River in the thick of the church sex abuse scandal and that, when the instant case was being tried, the Porter case and the wounds that it caused to the Fall River community again were in the public eye. In this setting, where invoking the church scandal was particularly inflammatory, we cannot be sanguine about its effect on the jury.

Our concern is magnified by the additional factor of the prosecutor's misstatement about the length of the kiss on Kathy's mouth. This exaggeration of the evidence was no small matter, given that indecency was the central issue in the case involving Kathy, and the question was a close one. When we add to the mix the prosecutor's burden-shifting remark ("[t]his is his case to win or lose") and her suggestion of a duty to convict ("[y]ou need to find him guilty"), the aggregate degree

---

[6]As reflected in our records, in the early 1990's, Porter was the subject of more than forty indictments charging him with sexually molesting children while serving as a priest in southeastern Massachusetts. He entered guilty pleas to some of these indictments and, at the time that the instant case was tried, was incarcerated in Massachusetts. He also had been the subject of other charges involving sexual abuse victims in Minnesota.

of impropriety and the concomitant risk of prejudice to the defendant were considerable.

The judge's final charge to the jury did little, if anything, to ameliorate this prejudice. Not only did the charge lack any focused and specific response to the prosecutor's impermissible remarks, see *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994); *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 296-297 (1990), it did not contain even the usual boilerplate that the jury were to decide the case only upon the evidence, that closing arguments were not evidence, and that passion and sympathy were to play no role in the jury's decision.[7] Finally, as previously observed, both charges against the defendant turned solely upon credibility; the evidence of guilt was not overwhelming.

A substantial risk of a miscarriage of justice exists if there is "serious doubt whether the result of the trial might have been different had the error not been made." *Commonwealth* v. *Randolph*, 438 Mass. at 297, quoting from *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999). As we harbor such doubts in this case, we are constrained to reverse the judgments of conviction.[8]

*Judgments reversed.*

*Verdicts set aside.*

---

[7]The judge had informed the jury at the inception of the trial, the preceding day, that "the evidence is the information upon which you decide" and that opening and closing statements of counsel were not evidence. But the only relevant caution in the final charge was a statement that "[t]he evidence is the testimony as you recall it, not as it's been related by anyone here other than the witnesses and your memory."

[8]In view of our decision, we need not consider the defendant's argument that the judge improperly considered uncharged conduct in sentencing.