COMMONWEALTH *vs.* ROBERT MIOZZA.

No. 05-P-554.

Bristol. April 11, 2006. - October 16, 2006.

Present: BECK, GELINAS, & COWIN, JJ.

*Indecent Assault and Battery. Constitutional Law,* Vagueness of statute. *Due Process of Law,* Vagueness of statute, Disclosure of evidence. *Practice, Criminal,* Indictment, Disclosure of evidence. *Evidence,* Exculpatory, Fresh complaint.

General Laws c. 265, § 13B, which sets forth the crime of indecent assault and battery on a child under the age of fourteen, was not unconstitutionally vague as applied to the criminal defendant, where judicial application of the statute had defined an indecent assault and battery as essentially an act or series of acts that were fundamentally offensive to contemporary moral values, and where a person of average intelligence could be expected to be able to identify such conduct. [570-571]
The evidence at a criminal trial was sufficient to convict the defendant of indecent assault and battery on children under the age of fourteen, in violation of G. L. c. 265, § 13B, where the evidence, if believed, demonstrated suggestive touchings and behavior with sexual overtones that together warranted the jury's finding that indecent assault and battery had taken place, and where the evidence permitted the jury to find unanimously that at least one indecent assault and battery on each complainant was perpetrated by the defendant during the time period in question. [571-573]
The judge at a criminal trial neither abused his discretion nor committed other error of law in determining that the criminal defendant was not prejudiced by the withholding of exculpatory evidence (a written victim impact statement prepared by the complainants' mother, in which she stated that she had rarely seen the defendant intoxicated), where the defendant's possible intoxication was not an issue at trial, and where the defendant made no offer of proof suggesting how he would have defended his case differently had he known of the statement. [573-575]
At the trial of criminal complaints charging the defendant with indecent assault and battery on children under the age of fourteen, in violation of G. L. c. 265, § 13B, the judge did not err in admitting in evidence fresh complaint testimony from the complainants' mother, where no more than a few months had elapsed between the last incident and the disclosure to the mother, the children were young, and the defendant held a position of trust and authority in the family as a friend and babysitter; and where, in the circumstances of the case, the fact that the complainants' statements were made in conversations initiated by their mother did not render the state-

ments inadmissible, as the judge could permissibly have concluded that the disclosure had been triggered by an event or a change in circumstances that invested the disclosure with spontaneity and plausibility. [575-576]

COMPLAINTS received and sworn to in the Fall River Division of the District Court Department on April 4 and April 26, 2000, respectively.

The cases were tried before *Joseph I. Macy,* J.

*Paul A. Montuori* for the defendant.

*Craig A. Souza,* Assistant District Attorney, for the Commonwealth.

COWIN, J. The defendant, Robert Miozza, was convicted by a District Court jury of two counts of indecent assault and battery on a child under the age of fourteen, see G. L. c. 265, § 13B.[1] He asserts that the evidence was insufficient to warrant a finding that the defendant touched the complainants in an "indecent" way, or that he touched them during the time period alleged in the amended complaints. In a related argument, he contends that the statute is unconstitutionally vague as applied to him. He argues also that his motion for a mistrial or dismissal should have been granted because the prosecutor withheld exculpatory evidence, and that testimony of the complainants' mother was admitted erroneously as fresh complaint evidence. We affirm.

1. *Facts.* The jury could permissibly have found the following. The complainants were sisters. During the period alleged in the amended complaints (1997 to 1999), Mary[2] was between eight and ten years of age, and Jane[3] was between six and eight years of age. Mary testified that she was between ten and eleven when the incidents occurred, while Jane did not testify specifically regarding the time frame. The defendant was a friend of the complainants' parents. He visited often with the complainants' family and, on more than one occasion, had lived with the family for several months in their Fall River apartment.

---

[1]The defendant was found not guilty with respect to charges of assault and battery on the same two complainants.

[2]A pseudonym, see G. L. c. 265, § 24C.

[3]Also a pseudonym.

The defendant would occasionally babysit for the complainants, at which times they were allowed to play with the family's PlayStation video game console. When the defendant began babysitting, the PlayStation was located in the living room of the family's apartment; by the time that most of the alleged incidents occurred, the family had moved to another apartment where the PlayStation was kept in the complainants' parents' bedroom. When babysitting at the second apartment, the defendant often entered the parents' bedroom because he was permitted to smoke there.

During the period in question, Mary, the older sister, would on occasion ask the defendant for permission to play with the PlayStation in her parents' bedroom, and in reply the defendant would ask Mary to kiss him. At these times, the defendant would lie on the bed and hold Mary on top of him as he kissed her on the lips. As they kissed, the defendant placed his hands on Mary's back or buttocks, or sometimes on the back of her head. The defendant often asked Mary to kiss him with an open mouth, but she refused and pushed him away.

Likewise, the defendant asked Jane, the younger sister, for kisses when she asked to play with the PlayStation. He put Jane on top of him while he lay on the bed and kissed her on the lips with a closed mouth. In one instance, the defendant held the door to the bedroom closed with his foot while he held Jane on top of him. On another occasion, he locked the bedroom door while he was inside the room with Jane; Mary was able to pick the lock with her thumbnail and observed the defendant holding Jane on top of him with his hands on her back.

When Jane was in the fourth grade, she attended a program at her school where physical and sexual abuse were discussed. After the last class, Jane wrote a note that disclosed the defendant's conduct with her. The program's director then contacted Sally,[4] the complainants' mother, and told her what Jane had reported. Sally approached each of her children separately and received confirmation directly from each.

After talking to her daughters, Sally called the police, who brought the defendant to the police station for an interview. The

[4]Also a pseudonym.

defendant signed a Miranda waiver and admitted to asking the girls for hugs and kisses before they could use the PlayStation. He stated that he was wrestling with Jane when Mary saw her on top of him in the bedroom. He admitted to drinking four to five beers while babysitting, and stated that if he were drinking alcohol, there was a seventy-five percent chance that he did ask the girls whether he could put his tongue in their mouths because, when he drinks, "he does stupid things" that he later regrets.

2. *Fair notice.* We reject the defendant's contention that the statute under which he was prosecuted, G. L. c. 265, § 13B, is unconstitutionally vague as applied to him because it does not define with sufficient precision the kind of behavior that it purports to criminalize. The relevant portion of the section provides only that "[w]hoever commits an indecent assault and battery on a child under the age of fourteen shall be punished," and does not define with greater specificity what constitutes an "indecent assault and battery." See G. L. c. 265, § 13B. However, a statute is not vague merely because "it requires a person to conform his conduct to an imprecise but comprehensible normative standard." *Commonwealth* v. *Conefrey*, 37 Mass. App. Ct. 290, 301-302 (1994), rev'd on other grounds, 420 Mass. 508 (1995), quoting from *Commonwealth* v. *Benoit*, 26 Mass. App. Ct. 641, 646 (1988). "A law is unconstitutionally vague and denies due process of law if it fails to provide a reasonable opportunity for a person of ordinary intelligence to know what is prohibited or if it does not provide explicit standards for those who apply it." *Commonwealth* v. *Jasmin*, 396 Mass. 653, 655 (1986), citing *Grayned* v. *Rockford*, 408 U.S. 104, 108-109 (1972).

"[A] sufficiently definite warning of criminal culpability may be achieved through judicial application of the statute to the same or similar conduct." *Commonwealth* v. *Nuby*, 32 Mass. App. Ct. 360, 363 (1992), quoting from *Commonwealth* v. *Benoit*, 26 Mass. App. Ct. at 646-647. We have defined an indecent assault and battery as "essentially an act or series of acts which are fundamentally offensive to contemporary moral values . . . . [I]t is behavior which the common sense of society would regard as immodest, immoral and improper." *Com-*

*monwealth* v. *Mosby*, 30 Mass. App. Ct. 181, 184 (1991), quoting from *Commonwealth* v. *Perretti*, 20 Mass. App. Ct. 36, 43-44 (1985). Because a person of average intelligence can be expected to be able to identify such conduct, the statute gives fair warning. See *Commonwealth* v. *Rosa*, 62 Mass. App. Ct. 622, 627 (2004). Indeed, similar concepts have been held to provide sufficient definition of criminal conduct even where they involve the sensitive area of rights under the First Amendment to the United States Constitution. See *Commonwealth* v. *Trainor*, 374 Mass. 796, 798-799 (1978) (Federal definition of obscenity as appealing to prurient interest of average person, applying contemporary standards of the Statewide community, and as depicting or describing sexual conduct in patently offensive way, not unconstitutionally vague under art. 16 of Massachusetts Declaration of Rights despite absence of precise articulation).

3. *Sufficiency of the evidence.* The defendant argues separately that, assuming that the statute defines the crime adequately, the evidence was insufficient to convict him. He contends first that the touchings of which he is accused do not constitute indecent assault and battery, and second that the evidence did not support findings that the touchings occurred within the dates alleged in the amended complaint. We apply the standards of *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979).

Case law on the subject of indecent assault and battery has established that "[a] touching is indecent when, judged by the 'normative standard' of societal mores, it is 'violative of social and behavioral expectations,' in a manner 'which [is] fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper.' " *Commonwealth* v. *Rosa*, 62 Mass. App. Ct. at 625, quoting from *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. 313, 314-315 (1997). Applying this definition, we have held that the "intentional, unjustified touching of private areas such as 'the breasts, abdomen, buttocks, thighs, and pubic area of a female' " is "indecent" as contemplated by the statute. *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. at 184-185, quoting from *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 59 (1982). However, a touching need not be confined to these listed areas of the body to be deemed indecent. See *Com-*

*monwealth* v. *Vazquez,* 65 Mass. App. Ct. 305, 307 (2005). "In certain circumstances, the touching of other intimate parts — including the mouth and its interior — may violate contemporary views of personal integrity and privacy." *Ibid.*

We have held that an unwanted kiss on the mouth may constitute indecent conduct, where it involves forced insertion of the tongue. See *Commonwealth* v. *Castillo,* 55 Mass. App. Ct. 563, 566-567 & n.2 (2002). While a brief kiss not involving the insertion of the tongue is not generally criminally indecent, see *Commonwealth* v. *Vazquez,* 65 Mass. App. Ct. at 309, we do not "requir[e] that there always be tongue involvement for an act that might be characterized as a kiss to be found indecent, [as the attendant circumstances] may allow the trier of fact rationally to determine that the kiss was an indecent act." *Id.* at 307.

In the present case, the evidence, if believed, demonstrates both suggestive touchings and behavior with sexual overtones that together warranted the jury's finding that indecent assault and battery had taken place. Improper sexual overtones "violative of social and behavioral expectations" can explain physical contact that may otherwise be ambiguous. See *Commonwealth* v. *Vazquez,* 65 Mass. App. Ct. at 309. As in the *Vazquez* case, the defendant in this case was an adult in his thirties, while the complainants were children; the defendant, as a close family friend, sometime resident of the complainants' house, and babysitter, occupied a position of authority with respect to the children; and the defendant's kissing and fondling was surreptitious, occurring only when he was alone with either complainant and sometimes behind a locked or held-closed door. The evidence showed also that the defendant attempted to entice Mary into kissing him with an open mouth, thus transforming what in another context could be seen as an innocent expression of affection into a sexual overture. Compare *Commonwealth* v. *Rosa,* 62 Mass. App. Ct. at 625-627. In the circumstances, the jury could permissibly find that the defendant's behavior violated clearly delineated and accepted societal expectations governing relationships between adults and children, and was therefore "indecent."

The defendant's alternative contention that the evidence was

insufficient because the amended complaint alleged that the acts occurred on divers dates between 1997 and 1999, and there was no proof that anything criminal took place in 1997, is without merit.[5] The time of the offense is not an element of indecent assault and battery, so there is no statutory requirement that the Commonwealth allege or prove specific dates or times. See *Commonwealth* v. *Conefrey*, 420 Mass. at 511 n.6. Furthermore, the defendant has neither alleged nor shown that he would have presented his defense differently had the dates alleged in the complaint been more precise. See *Commonwealth* v. *King*, 387 Mass. 464, 468-469 (1982). Where the evidence permitted the jury to find unanimously that at least one indecent assault and battery on each complainant was perpetrated by the defendant during the period in question, no greater specificity was required.

4. *Exculpatory evidence*. Subsequent to his conviction, the defendant filed a motion for a mistrial and dismissal of the complaint on the basis that the Commonwealth had withheld exculpatory evidence. The judge denied the motion on the ground that the defendant was not prejudiced. Because the motion was filed postconviction, we treat it as one seeking a new trial. See Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001); *Commonwealth* v. *Tucceri*, 412 Mass. 401, 408 (1992); *Commonwealth* v. *Fredette*, 56 Mass. App. Ct. 253, 257 n.8 (2002). We conclude that the judge neither abused his discretion nor committed other error of law, see *Commonwealth* v. *Hill*, 432 Mass. 704, 710 (2000), in determining that the defendant was not prejudiced by the withholding of evidence.

The evidence in question is a written victim impact statement prepared by Sally, the complainants' mother, in which she states that, in the fifteen years she had known the defendant, she had "maybe twice" seen him intoxicated "to where he didn't know what he was doing," and that she never left her children alone with him when he was drunk. Although in possession of the

---

[5]The amended complaint alleged that the incidents took place between 1997 and 1999. The complainants could not establish the dates of the incidents with greater particularity: Mary testified that they occurred when she was ten or eleven, which would have been between June 24, 1998, and June 23, 2000, and Jane's testimony contained no reference to the dates of the incidents.

statement prior to trial, the Commonwealth did not disclose it to the defendant until after he had been convicted. The defendant asserts that the statement was exculpatory, and therefore should have been turned over, because it portrayed the defendant as a responsible babysitter and contradicted police testimony that the defendant admitted to drinking while taking care of the children. He argues further that the statement was meaningful because it contradicted the Commonwealth's theory that his conduct was at least in part the product of intoxication.

It is not disputed that evidence that is in the possession of the government and that could aid materially in the defense of pending charges must be disclosed. See *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175 (1982); *Commonwealth* v. *Daniels*, 445 Mass. 392, 401 (2005). If the defendant has expressly requested the specific evidence, a showing of a substantial basis for concluding that the defendant has been prejudiced by nondisclosure requires the granting of a new trial. See *Commonwealth* v. *Tucceri*, 412 Mass. at 412. If the defendant has not made a specific request, a new trial is granted only if it is found that there is a "substantial risk that the jury would have reached a different conclusion if the evidence had been admitted at trial." *Id.* at 413.

Here, we need not determine whether the defendant made a general or specific request (a point disputed by the parties) because assuming, without deciding, that the statement should have been disclosed, and applying the more lenient standard of prejudice, we agree that a new trial is not required. The defendant's possible intoxication was not a material issue at trial. Neither complainant testified that he had been drinking when the touchings occurred, and the issue surfaced only when a police witness testified to the defendant's admission that he could have committed the acts if he had been drinking at the time. Sally's statement did not contradict any of her testimony and did not address anything on which the case might have turned. See *Commonwealth* v. *Ellerbe*, 430 Mass. 769, 780 (2000). That Sally saw the defendant intoxicated only on rare occasions, and that she never left the children with him when she was aware that he had been drinking, does not mean that he did not drink outside her presence and when alone with the

complainants. In the absence of an offer of proof suggesting how the case would have been defended differently had the defendant known of the statement, we conclude that there has been no demonstration of prejudice.

5. *Fresh complaint.* Finally, we reject the defendant's contention that Sally's fresh complaint testimony was erroneously admitted because the complainants' statements to her were too remote in time from the incidents and were not sufficiently spontaneous to be characterized as fresh complaints. Because this case was tried before the decision in *Commonwealth* v. *King*, 445 Mass. 217, 218 (2005), cert. denied, 126 S. Ct. 1433 (2006), we apply the fresh complaint doctrine that was in effect prior to that decision, rather than the "first complaint" doctrine that is now in effect.

Under the fresh complaint doctrine, an out-of-court complaint seasonably made by the victim of a sexual assault was admissible for the limited purpose of corroborating the victim's testimony. See *Commonwealth* v. *Fleury*, 417 Mass. 810, 813 (1994). The judge must determine that the complaint was "reasonably prompt" in the circumstances before allowing its admission as a fresh complaint. *Id.* at 813-814, quoting from *Commonwealth* v. *Montanino*, 409 Mass. 500, 508 (1991). "Whether statements are sufficiently 'fresh' is within the sound discretion of the trial judge." *Commonwealth* v. *Thayer*, 418 Mass. 130, 134 (1994). When the alleged victim is a child, we recognize that the time within which abuse is reported may be longer than would otherwise be expected, and have accordingly been flexible in applying fresh complaint requirements to child complainants. See *Commonwealth* v. *Fleury*, 417 Mass. at 814; *Commonwealth* v. *Howell*, 57 Mass. App. Ct. 716, 720 (2003).

Here, it is unclear from the evidence precisely how long the delay was between the incidents and the complaints by the children to Sally; it appears, however, that no more than a few months elapsed between the last incident and the disclosure.[6] The defendant held a position of trust and authority in the fam-

---

[6]The complainants first reported the abuse to Sally during March of 2000. Mary testified that the abuse occurred when she was ten or eleven, which would have been between June 24, 1998, and June 24, 2000. She also testified that it occurred almost every time the defendant babysat, and that he stopped

ily as a friend and babysitter, and had actually lived with the family for extended periods. In considering the timeliness of a "fresh complaint," we consider the ages of the complainants; their relationships with the defendant; the position of trust occupied by the defendant; "and, where the defendant played some supervisory role in the . . . life [of the complainants], the length of time that the complainant[s were] out from under the defendant's control." *Commonwealth* v. *Fleury*, 417 Mass. at 814-815. In the circumstances of this case, the delay in reporting was not unreasonable for purposes of determining the admissibility of the complaints.[7] Given how the information regarding the abuse surfaced, we are not dissuaded by the fact that the complainants' statements were made in conversations initiated by their mother, a fact that the jury could also take into account. The judge could permissibly conclude that the disclosure was "triggered by an event, or a change in circumstances, that invests the disclosure with spontaneity and plausibility." *Commonwealth* v. *Howell*, 57 Mass. App. Ct. at 721, quoting from *Commonwealth* v. *Traynor*, 40 Mass. App. Ct. 527, 532 (1996).

*Judgment affirmed.*

*Order denying motion for dismissal or mistrial affirmed.*

---

babysitting a month or two before her sister disclosed what had taken place.

[7]Once the evidence was admitted, the jury could consider any delay in reporting for the purpose of assessing the credibility of the complainants.