After a jury trial, the defendant was convicted of enticing a child under sixteen, in violation of G. L. c. 265, § 26C(b ).[2] He appeals, arguing that his motion for a required finding of not guilty should have been allowed based on insufficient evidence; the judge erroneously admitted certain text messages without proper authentication and additional testimony that was unfairly prejudicial; and the prosecutor improperly bolstered the victim's credibility during closing argument. We affirm.
Sufficiency of evidence. The defendant was charged and convicted specifically of having enticed an eleven year old child with intent to commit an indecent assault and battery on a child under fourteen, rape, and rape of a child.[3] He contends that there was insufficient evidence to convict him because, in his view, the Commonwealth failed to present sufficient evidence to prove that he possessed the requisite intent to commit one of the enumerated offenses. We disagree. "The crime of child enticement 'has four elements: (1) "Any one who entices," (2) "a child under the age of 16, or someone he believes to be a child under the age of 16," (3) "to enter, exit or remain within any vehicle, dwelling, building, or other outdoor space," (4) "with the intent that he or another person will violate [one of the enumerated statutes] ... or any offense that has as an element the use or attempted use of force." ' " Commonwealth v. Hall, 80 Mass. App. Ct. 317, 322 (2011), quoting from Commonwealth v. LaPlante, 73 Mass. App. Ct. 199, 202 (2008). See G. L. c. 265, § 26C(b ). Although an overt act by the enticer is not required, more than "merely speaking words" is necessary. LaPlante, supra. "[I]n addition to enticing words or gestures, ... the person who entices [must also do] so with the intent to violate one or more of the enumerated criminal statutes; in other words, [the statute requires] that the person who entices does so with a criminal mens rea" (emphasis omitted). Ibid., quoting from Commonwealth v. Disler, 451 Mass. 216, 222 (2008).
The jury heard the following evidence. The victim knew the defendant as the boy friend of one of her mother's friends; after the defendant's girl friend had a baby, he "started hanging out with [the victim and her family] a lot." They went to the lake because the defendant had a "Jet-ski," and the families frequently went out to eat as a group. After a few months, the victim and the defendant began "getting to know each other more" when their families were not present; on one occasion the defendant's girl friend called the defendant from the victim's cellular telephone, and the victim saved the number so that she would have it "for emergencies or anything." At some point thereafter, the defendant began calling the victim frequently ("[a] couple times a day") on her cellular telephone; he was the only person who answered his telephone when she called on the saved number she knew to be the defendant's. They began sending "[a] lot" of text messages and photographs to each other, with the victim always using the same telephone number to reach the defendant.
The defendant soon began texting the victim that he loved her, and, when the victim responded that she loved him too, he messaged back, "I love you my world," and "if [she] loved him to call [him]"; the defendant texted that "he's never loved or talked to a woman, or he should say a little girl, so pretty like [the victim]."[4] He told the victim that "he's gonna die if he's not with [her]" and "my heart's yours and only yours." Over time, the victim began to believe that the defendant was her boy friend in addition to a father figure; she told him that she was eleven years old and he told her that he was "twenty-something" although, in fact, he was thirty-five.
The victim and the defendant never went "to stores or anything" alone, but, on one occasion, she went on his Jet-ski and, while they were out on the lake, he tried to kiss her. She backed away because she "didn't want to kiss him." At times when they were in the car together "he would grab [her] leg but [she] wouldn't think of it in the wrong way." The defendant continuously told the victim that he loved her and he expressed to her his desire "to take [her] over [to the Dominican Republic] so [they] could get married and [they] would be able to be together"; he told her that "in the Dominican Republic ... there [were] different laws and that [they] ... would be able to be together because ... the marriage thing was younger over there and they weren't so strict as they are over here in Lawrence."[5]
At some point, the victim's mother discovered the relationship between the defendant and the victim, and the mother confiscated the victim's cellular telephone for one week; the victim was unable to talk to the defendant during that time. The defendant later supplied the victim with a new purple cellular telephone with his telephone number preprogrammed into the contacts list.[6] Earlier, the defendant had instructed the victim to identify his telephone number by using a "key word" (the letter "A") so that, if the victim's mother saw the message she would not know that the victim was communicating with the defendant. In the telephone the defendant gave her, the victim saved his telephone number under the name "Kiara" "so if [her] mom or anyone found the phone they wouldn't know that it was him." The victim also testified that she received a photograph of a penis attached to a text message sent from the defendant's telephone number. The victim's relationship with the defendant ended the day he was arrested.
The victim's mother testified that, when she checked her cellular telephone bill, she discovered multiple calls from her daughter to the defendant's telephone number; she was familiar with the defendant's telephone number because he had texted her from that same number on prior occasions. The mother was able to see from the itemized bill the dates and times of the calls between the victim and the defendant, with some of the calls occurring in the "[m]iddle of the night" and some as long as "[a]n hour and a half." When she confronted the defendant, he denied any communication with the victim.
In support of his motion for a required finding of not guilty, the defendant argued that "the only perceived tangible contact [with the victim] was of a kiss," and thus there was insufficient evidence of an indecent assault and battery. "A touching is indecent when, judged by the 'normative standard' of societal mores, it is 'violative of social and behavioral expectations,' in a manner 'which [is] fundamentally offensive to contemporary moral values ... [and] which the common sense of society would regard as immodest, immoral and improper.' " Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 571 (2006), quoting from Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 625 (2004). "We have held that an unwanted kiss on the mouth may constitute indecent conduct, where it involves forced insertion of the tongue. ... While a brief kiss not involving the insertion of the tongue is not generally criminally indecent, ... we do not 'requir[e] that there always be tongue involvement for an act that might be characterized as a kiss to be found indecent, [as the attendant circumstances] may allow the trier of fact rationally to determine that the kiss was an indecent act.' " Miozza, supra at 572, quoting from Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307 (2005). In this case, the jury reasonably could have found that the kiss was an indecent act, due to the age disparity between the thirty-five year old defendant and the eleven year old victim; the conversations that the two were having, including his statement that he wished to marry her in the Dominican Republic; the texted photograph of a penis; and the fact that the victim was unwilling to kiss the defendant. See Miozza, supra.
In addition, even if the kiss itself was not an indecent assault and battery, the defendant was not charged with actually committing an indecent assault and battery. Rather, he was charged only with enticing the victim so that he would be able to commit the act. See Disler, 451 Mass. at 222 ("What the statute does require in addition to enticing words or gestures, and indeed what we conclude is needed to ensure that constitutionally protected communications are not criminalized by the statute, is that the person who entices does so with the intent to violate one or more of the enumerated criminal statutes; in other words, that the person who entices does so with a criminal mens rea. In sum, the crime of child enticement is complete when an individual, possessing the requisite criminal intent as set forth in [ G. L. c. 265, § 26C(b ),] and discussed in greater detail below, employs words, gestures, or other means to entice [or lure, induce, persuade] someone who is under the age of sixteen, or whom the actor believes is under the age of sixteen, to enter or remain in a vehicle, dwelling, building, or outdoor space" [emphasis omitted] ).
Next, the defendant argues that there was no attempt at rape and nothing that would indicate a possible use of force. Again, we disagree. The sexual undertones of the text messages the defendant sent to the victim, together with the victim's age and the defendant's stated desire to bring her to the Dominican Republic to get married, provided the jurors with sufficient evidence for them to determine that the defendant had the requisite intent to have sexual intercourse with this underage child. See LaPlante, 73 Mass. App. Ct. at 202. Moreover, given the more than twenty-year age difference between the parties, the circumstances of being alone with the child and the close relationship between their respective families, the jury would have been warranted in finding that the defendant intended to use at least constructive force to accomplish that goal. See Commonwealth v. Wallace, 76 Mass. App. Ct. 411, 417-418 (2010). See also Commonwealth v. Moniz, 43 Mass. App. Ct. 913, 913-914 (1997), and cases cited. Viewing the evidence in the light most favorable to the Commonwealth, we are persuaded that the judge did not abuse his discretion in denying the defendant's motion for a required finding of not guilty. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).
Admission of evidence. The defendant next claims that the judge erred in admitting the text messages between the defendant and the victim because the text messages were not properly authenticated to establish that each was authored by the defendant; he also argues that the testimony regarding the texted photograph of a penis was inflammatory and more prejudicial than probative. Both arguments lack merit.
First, the text messages were properly authenticated. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Commonwealth v. Gilman, 89 Mass. App. Ct. 752, 758 (2016), quoting from Mass. G. Evid. § 901(a) (2016). "Evidence may be authenticated by direct or circumstantial evidence, including its '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics.' " Commonwealth v. Purdy, 459 Mass. 442, 447-448 (2011), quoting from Mass. G. Evid. § 901(b)(1), (4) (2011). The basic principles of authentication apply equally to forms of electronic communications, such as text messages. Purdy, supra at 450. However, "[t]here must be some 'confirming circumstances' sufficient for a reasonable jury to find by a preponderance of the evidence that the defendant authored' the messages." Gilman, 89 Mass. App. Ct. at 759, quoting from Purdy, supra.
Here, the messages originated from the defendant's telephone number, which the victim had in her contacts list after the defendant's girl friend had called the defendant from the victim's telephone; the victim saved the defendant's telephone number, as he suggested, under the identifying "A" code to maintain secrecy. After her mother confiscated her telephone, the defendant gave the victim a cellular telephone and added his number to her contacts; the victim saved the number under the name "Kiara." From that same telephone number the victim received a number of text messages, including one with a photograph of a penis attached.[7] The victim's mother testified that she recognized the defendant's telephone number on her cellular telephone bill after learning of the extensive number (and length) of calls between the defendant and her daughter. There was no evidence of access to, or use of, the defendant's telephone by others. These "confirming circumstances" amply support a conclusion that the defendant authored the text messages sent to the victim. See Gilman, supra.
Second, the admission of the photograph of the penis was more probative than prejudicial.[8] "A determination whether particular ... photographs may be admitted is within the sound discretion of the trial judge" and that judge "must exercise his or her discretion to 'determine whether the inflammatory nature of a photograph outweighs its probative value.' " Commonwealth v. Bell, 473 Mass. 131, 142 (2015), quoting from Commonwealth v. Cardarelli, 433 Mass. 427, 431 (2001). Testimony regarding pornographic material shown to a child victim may be admissible to corroborate the child's testimony regarding a sexual assault. See Commonwealth v. Jaundoo, 64 Mass. App. Ct. 56, 61 (2005).
In this case, the victim's testimony regarding her receipt of a photograph of a penis attached to a text message received from the defendant's telephone number, was relevant to show the defendant's intent and state of mind when communicating with the victim. Ibid. The fact that the judge sustained the defendant's objection to the testimony that the penis was his, and the fact that the testimony thereafter was struck, protected the defendant from unfair prejudice, as we presume the jury followed the judge's instructions. Commonwealth v. Andrade, 468 Mass. 543, 549 (2014).
Closing argument. The defendant finally argues that the prosecutor improperly bolstered the victim's credibility by commenting on her willingness to testify, and arguing that the victim had no reason to lie. This argument also fails. Because the defendant did not object at trial to the prosecutor's closing argument, we review to "determine whether there was error and, if so, whether it gave rise to a substantial risk of a miscarriage of justice." Commonwealth v. Shanley, 455 Mass. 752, 773 (2010).
The defense theory was that the victim was a "love-struck young girl" who fabricated a relationship with the defendant, and was then embarrassed and angry when he denied the relationship existed. Where defense counsel challenges a victim's credibility, the prosecutor may "marshal the evidence in closing argument [to] urge the jury to believe the government witnesses." Commonwealth v. Beaudry, 445 Mass. 577, 587 (2005). The prosecutor may invite the jury to consider whether the victim had a motive to lie and also may identify "evidence that demonstrates that the victim's testimony is accurate and reliable." Commonwealth v. Polk, 462 Mass. 23, 40 (2012).
Here, the prosecutor did just that by properly limiting her argument to facts in evidence supporting the accuracy and reliability of the victim's testimony. Shanley, supra. Specifically, she directed the jurors' attention to the victim's testimony that the defendant was like a father figure and, at the same time, a boy friend to her; the victim's and the defendant's families were close and would eat out and spend time doing activities together; the defendant had attempted to kiss her while she was alone with him on the Jet-ski; and she had received text messages from the defendant on the telephone her mother gave her, and, later, the telephone supplied to her by the defendant with his telephone number preprogrammed into the contacts. The prosecutor also directed the jurors' attention to the victim's mother's testimony of her telephone bill listing the telephone number she knew to be the defendant's receiving several telephone calls from her daughter's telephone, some of them in the middle of the night and lasting more than one hour. In considering the entirety of the prosecutor's closing argument, and the judge's instructions to the jury, we discern no error and, certainly, no risk of a miscarriage of justice. See Commonwealth v. Braley, 449 Mass. 316, 329 (2007).
Judgment affirmed.

Specifically, the complaint charged that, "[o]n dive[r]se dates 05/10/2014-07/22/14 [the defendant] did entice, as defined in G. L. c. 265, § 26C(a ), a child under the age of 16, or someone whom the defendant believed to be a child under the age of 16, to enter, exit or remain within some vehicle, dwelling, building, or other outdoor space with the intent that the [defendant] or some other person would violate G. L. c. 265, §§ 13B, 22, 22A... or some offense that has as an element the use or attempted use of force, in violation of G. L. c. 265, § 26C(b )." Beneath that boilerplate is listed: "22 Aggravated Rape by force, 22A Rape of Child w force, 13B Indecent A & B on child [under] 14."

The term "entice" means "to lure, induce, persuade, tempt, incite, solicit, coax or invite." G. L. c. 265, § 26C(a ), inserted by St. 2002, c. 385, § 3.

When the victim doubted that the defendant wanted to talk to her rather than the defendant's girl friend, he responded, "[I]f it's her [his girlfriend] he's talk-that he's thinking about he wouldn't be talking to [the victim]. And that-he said that if [she] didn't believe him that he'll show [her]." He texted the victim that he loved her and only her.

The victim testified that, when the defendant told her this, she was "scared because [she] didn't want to ... leave [her] family and just be over [in the Dominican Republic] alone."

On a day when the victim came home from summer school, the defendant was waiting across the street from her house at the "reservoir"; she met him there and he let her choose a new telephone from the three that he showed to her. At trial, the victim identified a photograph of the cellular telephone as the one that the defendant gave to her on that day; the photograph was admitted in evidence.

The victim testified that she had never seen the defendant's penis. The judge thereafter sustained the defendant's objection challenging the victim's testimony that the photograph was of "[h]is penis," instructing the jurors to strike that testimony from their minds.

At trial, the defendant challenged the admission of the photograph of the penis on the grounds of late disclosure by the Commonwealth; here, the defendant argues that the photograph-related testimony is unduly prejudicial.