MILKEY, J. (concurring).
Jane (a pseudonym) testified that the defendant gave her a close hug "like [she] would receive from [her] parents." She also testified that, as he was pulling away from the hug, the defendant lifted the bottom of her polo shirt "slightly," without touching or exposing any skin. Based on such conduct, the defendant was convicted of two counts of indecent assault and battery on a person under the age of fourteen, G. L. c. 265, § 13B, and sentenced to fifteen years in State prison. I agree with the majority's conclusion that, as a matter of law, the defendant's conduct-while improper-did not rise to the level of an "indecent" assault and battery. Ante at ----, 99 N.E.3d at 831-32. I also agree that none of the existing cases has held that conduct of this nature could be considered indecent. Nevertheless, our cases include some expansive pronouncements that lend support to the Commonwealth's position, and thereby provide encouragement to the type of prosecution here. I write separately to express my view that the case before us presents an appropriate opportunity to revisit such language.
The narrow question we face is not whether the defendant's conduct was improper or even illegal. Instead, it is whether the Legislature intended that such conduct amounted to an "indecent" assault and battery of a child, an offense the Legislature considered *142 so heinous that it merits severe mandatory sanctions.[1] Thus, the *833 case goes to the heart of what it means for a touching to be indecent.
As the majority well explains, an intentional, unjustified touching of certain enumerated body parts-such as genitalia, buttocks, and female breasts-is deemed indecent under the statute. See, e.g., Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184, 567 N.E.2d 939 (1991). Cases involving the touching of such off-limits areas therefore generally are straightforward.[2] Difficulties arise where, as here, there has been no contact with any of those areas, but the defendant nevertheless has touched the person in a manner that could be considered improper. Our cases hold that such a touching still could be found to have been "indecent," and they set forth a number of general guiding principles to assist in resolving that issue. In this manner, we have pronounced that a touching can be indecent if it violates "contemporary views of personal integrity and privacy,"[3] if it is "fundamentally offensive to contemporary moral values,"[4] or if it is "immodest and improper because of its sexual overtones."[5]
If the just-quoted principles are indeed what is supposed to guide the fact finder, then we should be affirming the conviction before us. Here, a man who was almost sixty years old brought a thirteen year old girl he had only recently met to a back room where he improperly gave her a close hug and briefly started to *143 lift the bottom of her shirt. To state what I believe is obvious, jurors readily could consider such conduct as flouting contemporary societal norms, as violating the victim's "personal integrity and privacy," and as having "sexual overtones."[6] Accordingly, if we are to hold-as I agree we should-that the defendant's conduct was not "indecent," then it must be because our prior pronouncements are too expansive as to how they define that term.
To be sure, the term "indecent" admits of a broad range of definitions, some of which support the Commonwealth's position. For example, one commonly used dictionary *834 sets a bar that is markedly low and indefinite for what it means for something to be "indecent." See American Heritage Dictionary of the English Language 891 (5th ed. 2016) (defining "indecent" to mean "[o]ffensive to accepted standards of decency or modesty; lewd or vulgar ... [n]ot appropriate or becoming; unseemly"). But under the rule of lenity, ambiguity in the meaning of a statutory term must be resolved in favor of a defendant. See Commonwealth v. Williamson, 462 Mass. 676, 679, 971 N.E.2d 250 (2012), quoting from Commonwealth v. Roucoulet, 413 Mass. 647, 652, 601 N.E.2d 470 (1992) ("[W]hen a criminal statute can 'plausibly be found to be ambiguous,' the rule of lenity applies, and we 'give the defendant the benefit of the ambiguity' "). Indeed, the interpretation proffered by the Commonwealth-in my view-rests on notions of impropriety so vague as to raise due process concerns. A more narrow interpretation is necessary to avoid those concerns. See Commonwealth v. Kenney, 449 Mass. 840, 850, 874 N.E.2d 1089 (2007), quoting from Commonwealth v. Orlando, 371 Mass. 732, 734, 359 N.E.2d 310 (1977) ("It is well established that due process requires criminal statutes that are not 'sufficiently explicit to give clear warning as to proscribed activities' to be declared unconstitutional"). See also Commonwealth v. Carpenter, 325 Mass. 519, 521, 91 N.E.2d 666 (1950) ("The vice of the *144 ordinance [prohibiting 'sauntering or loitering' in a street] lies in its failure to prescribe any standard capable of intelligent human evaluation to enable one chargeable with its violation to discover those conditions which convert conduct which is prima facie lawful into that which is criminal"), and cases cited. Put simply, courts have a responsibility to make explicit where the boundaries of illegality are drawn. The role of a jury should be to decide whether a defendant has committed the offense charged, not to resolve what that crime is.[7]
How then should courts draw the line between an ordinary assault and battery and an indecent one in cases that do not involve the touching of one of the forbidden body parts? In my view, mere sexual "overtones" are not enough. Instead, the contact should be required to be overtly sexual based on objective standards.[8] In other words, for a touching to be indecent, it would have to involve a level of physical invasiveness comparable to the touching of *835 one of the forbidden body parts.[9] A hug like a parent would give and the "slight[ ]" lifting of the bottom of Jane's shirt do not meet that standard.
Notably, adhering to such a standard would not have left the Commonwealth without a remedy here. Had the Commonwealth *145 wanted to, it plainly could have prosecuted the unwanted hug and the slight lifting of the bottom of Jane's shirt as simple assault and batteries. Moreover, the Commonwealth could have asked the judge to take the particular nature of these touchings into account as a factor to be considered during sentencing.[10] The fact that the Commonwealth did not pursue that sensible course of action is due in part to the undue breadth of our prior pronouncements.

Subject to limited constitutional review-not here presented-it is, of course, up to the Legislature to set whatever minimum mandatory sentences it deems warranted. The question before us therefore is one of legislative intent: whether the Legislature intended to include conduct of the sort at issue here within the scope of the offenses that would be treated as harshly as the indecent assault and battery statute does. As the trial judge himself observed in imposing a minimum mandatory fifteen-year sentence, that punishment was "completely disproportionate to the crime here," and "the same prison sentence ... would be imposed upon someone who committed murder in the second degree." That the defendant might not have received any greater punishment for killing Jane than for hugging her begs the question whether the Legislature intended to include the latter within the scope of offenses that would be subject to such sanctions.

That said, the list itself may be overinclusive. For example, the list includes the "abdomen," see Commonwealth v. Mosby, supra at 184, 567 N.E.2d 939, even though it is not immediately apparent how the touching of a person's abdomen necessarily would be considered sexual in nature.

Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307, 839 N.E.2d 343 (2005).

Commonwealth v. Mosby, supra at 184, 567 N.E.2d 939, quoting from Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43, 477 N.E.2d 1061 (1985).

Commonwealth v. Ortiz, 47 Mass. App. Ct. 777, 779, 716 N.E.2d 659 (1999).

Especially since other explanations for the defendant's actions are not apparent, the jury could have concluded that the defendant's actions were driven by sexual urges. This alone likely would be enough to create "sexual overtones" in the mind of the jurors. If the standard is one of mere "sexual overtones," proper jury instructions about ignoring a defendant's intent are unlikely to cure the problem. See Commonwealth v. Sullivan, 82 Mass. App. Ct. 293, 327 n.37, 972 N.E.2d 476 (2012) (Milkey, J., dissenting) ("In the context of [a child pornography] case ... an instruction [that the jury are not to consider whether the defendant found the photograph lewd] has as realistic a chance of successfully getting the jury to put the defendant's thoughts out of their minds as would a plea to 'stop thinking about the elephant in the room' ").

I recognize that courts have not always adopted this view in cases dealing with human sexuality. In fact, examples abound of cases in which-in defining sex offenses-judges have tolerated levels of vagueness and ambiguity that would be deemed unacceptable in other contexts. See, e.g., Jacobellis v. Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring) (where Justice Stewart famously declaimed, with regard to trying to define obscenity, "I know it when I see it"). See also United States v. Frabizio, 459 F.3d 80, 85-86 & n.9 (1st Cir. 2006) (declining to define "lasciviousness" for jury in child pornography case, because term "needs no adornment" and because defining term risked removing some conduct from intended scope of statute); Commonwealth v. Sullivan, supra at 294, 302, 972 N.E.2d 476 (upholding child pornography conviction based on possession of single photograph of naked child playing on beach even though nakedness alone cannot make photograph "lewd" and jury had been given little objective direction as to what more was needed). Providing juries objective guidance on what it means for a touching to be indecent is especially important given that the subject area of human sexuality tends to evoke such strong emotional responses.

Applying such a standard would not have changed the result of the past reported cases. For example, a doctor's inserting his tongue into his patient's mouth would still constitute an indecent assault and battery. See Commonwealth v. Mamay, 407 Mass. 412, 418, 553 N.E.2d 945 (1990).

Compare Commonwealth v. Sullivan, supra at 320, 972 N.E.2d 476 (Milkey, J., dissenting) ("A visual image of a naked child cannot be considered a 'lewd exhibition' unless it presents the child in an overtly 'sexualized' manner that is tantamount to sexual abuse or exploitation of the child").

In this regard, I note that at sentencing, Jane's mother gave an eloquent statement about the impact of the defendant's actions on her daughter. It is apparent from the transcript that the judge was moved by this statement, and he observed that he still would have imposed a prison sentence if one had not been required, even though he believed the "touchings here[ ] are certainly not worthy of [the] Draconian sentence [required by the statute]."