Commonwealth *vs.* Ward W., a juvenile.

No. 97-P-1759.

Suffolk. January 7, 1999. - June 30, 1999.

Present: Kass, Kaplan,' & Lenk, JJ.

*Juvenile Court,* Delinquent child. *Delinquent Child. Practice, Criminal,* Juvenile delinquency proceeding, Required finding. *Joint Enterprise. Robbery. "Carjacking." Statute.*

At the trial of charges of armed robbery and armed carjacking, an inference from circumstantial evidence that the juvenile was a joint venturer was not warranted, and the juvenile's motion for a required finding of not guilty should have been allowed. [212]

At the trial of a juvenile, the judge properly admitted in evidence, with appropriate limiting instructions, redacted tapes and transcripts of a 911 call and discussions between the dispatcher and a police officer, without any testimony from the dispatcher, for the limited purpose of establishing the lapse of time between the call and the response. [212-213]

COMPLAINT received and sworn to in the Boston Division of the Juvenile Court Department on October 10, 1996.

The case was tried before *Sally F. Padden,* J.

*Karl R.D. Suchecki (Jennifer Marie Petersen* with him) for the juvenile.

*Mark D. Zanini,* Assistant District Attorney, for the Commonwealth.

LENK, J. The juvenile[1] was adjudicated delinquent in 1996 by a Juvenile Court jury by reason of armed robbery, G. L. c. 265, § 17, and armed carjacking, G. L. c. 265, § 21A, on a theory of joint venture. The juvenile on appeal claims that the trial judge erred in two respects: (a) by denying his motion for a required finding of not guilty and (b) by allowing into evidence 911 and turret tapes and transcripts.

The evidence, viewed in the light most favorable to the Commonwealth, is as follows. At approximately 10:30 P.M. on Friday,

---

[1] The juvenile was fourteen years old at the time of trial.

April 5, 1996, Eric Schwartz was loading items into the trunk of his green 1996 Acura, which was parked on the left side of West Brookline Street across the street from his apartment in the South End area of Boston. West Brookline Street is a one-way street directed toward Tremont Street, with which it intersects. The Acura was three car lengths from the Tremont Street corner. Its steering wheel was locked with an anti-theft device which can be removed with a key, generally taking between ten and sixty seconds.

As Schwartz reached up to close his car trunk, he saw a stick coming down on him from behind. Schwartz grabbed the hockey stick from his assailant, threw it into the trunk, slammed the lid closed, and told his assailant, "Get away from here! Go away! It's over!" It was at this point that Schwartz noticed two human forms, one standing on either side of the car's front doors, but he could not tell if those human forms were male or female or otherwise identify them. There was no testimony concerning any activity by the hovering forms. Schwartz was clear that his assailant was male, about five feet, six inches tall, and not the juvenile. In contrast, Schwartz was unable to tell what the two figures of uncertain gender were wearing and could only say that they were over five feet tall, taller than the Acura car door.

The assailant pushed Schwartz away from the car, held a sharp metal object under his chin, and ordered him to hand over his wallet and key chain holding twelve keys. Schwartz complied, was released, and ran across the street to his apartment without looking back. He then called 911 and directly reported the attack.

Thirty seconds after receiving Schwartz's 911 call, the police broadcast notice of a stolen green Acura. One Boston police officer, Steven Duran, heard the dispatch while patrolling in his marked cruiser on Tremont Street about seven blocks away from West Brookline Street. Within seconds, Duran saw a green Acura heading in the opposite direction from him on Tremont Street. Duran changed direction and followed the Acura. He saw three males inside, one driving, one in the front passenger seat, and one, the juvenile, in the rear. Two were Hispanic, one black; it is unclear from the record whether the juvenile is black or Hispanic. The juvenile turned and looked back at the cruiser six to ten times. Duran turned on his cruiser's blue lights but the Acura sped up, Duran giving chase for about a mile until the Acura came to a stop and its five occupants emerged and

fled on foot. There were three males and two females. The males were the driver, the front seat passenger, and the juvenile. The juvenile and the two unidentified females left via the rear doors. Duran did not give chase to the females, whom he described as Hispanic teenage girls with dark hair, of medium build and perhaps five feet, two or three inches tall, wearing dark jackets. He did chase the three males, with the help of back-up officers, and all three were eventually caught.

The driver, described as being five feet, four inches to five feet, six inches tall, had on him when apprehended, among other things, two screwdrivers and the victim Schwartz's cellular phone. The front seat passenger, described as fourteen or fifteen years old, thin, about five feet, eleven inches tall, was found with a knife and the victim's car antenna in his pocket. The juvenile, found crouching behind a storm door with a screwdriver, was described as being very short, possibly around five feet tall. There was no description of the screwdriver found on the juvenile and it was not entered in evidence at trial.

The juvenile contends that it was error to have denied his motion for a required finding of not guilty because there was insufficient evidence to convict him as a joint venturer of armed robbery and armed carjacking. To do so, the Commonwealth must prove beyond a reasonable doubt that the juvenile was "(1) present at the scene of the crime, (2) with knowledge that another intends to commit the crime or with intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth* v. *Williams*, 422 Mass. 111, 121 (1996). The question for us, then, is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, 443 U.S. 307, 318-319 (1979). *Commonwealth* v. *Roman*, 427 Mass. 1006, 1007 (1998). See Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979).

The Commonwealth contends that the evidence was adequate to the purpose, drawing our attention to evidence showing the juvenile's consciousness of guilt (repeatedly looking back over his shoulder in the car at the cruiser behind; running on foot with the other two males from the car; hiding with a screwdriver behind a porch door) and to the evidence showing the very brief period of time between the commission of the crime and the

sighting of the stolen Acura with the juvenile in it, allowing no time for passengers not already at the scene to be picked up. Taken together, this evidence, the Commonwealth argues, permitted the jury to conclude beyond a reasonable doubt that the juvenile, the principal, and another (presumably the driver and the front seat passenger) approached the crime scene together with the common goal of armed robbery and carjacking, that the juvenile was the shadowy human form on the driver's side of the car ready to aid and assist the principal, that he sat in the back seat of the stolen car, as did the two females, immediately after the victim ran away, while the other two males got in the front, and they all drove off together.

The question presented is very close. The extremely short period of time that elapsed between the carjacking and the sighting of the car would seem sufficient to satisfy a rational trier of fact beyond a reasonable doubt that all of the occupants of the car at the time it was sighted and stopped were also present at the scene of the crimes. All five occupants fled, displaying the same consciousness of guilt; that the juvenile in addition turned around repeatedly to look at the police cruiser in pursuit and was found with a screwdriver of indeterminate dimensions adds but little to the point.[2] The difficulty lies in the fact that, even if it were reasonable for the jury to conclude beyond a reasonable doubt that all five people who fled from the stolen car were present at the scene of the crime, not even the Commonwealth maintains that there was sufficient evidence to convict all four non-principals under a joint venture theory. While there may have been sufficient evidence to convict the two shadowy human forms as joint venturers,[3] there was insufficient evidence that the other two persons present knew that the principal intended to commit the crime or that they were avail-

[2]This is especially true since there was no evidence as to what the screwdriver looked like. It could as easily have been a screwdriver with a six-inch shaft, capable of being used as a weapon, as it could a miniature screwdriver used for repairing eyeglasses.

[3]The two persons were present at the scene of the crime, the first element of joint venture. From the manner in which the victim was attacked and from the position of the two on either side of the car, the jury could reasonably infer that the two shadowy figures and the principal approached the crime scene with the common goal of armed robbery and carjacking and that both shadowy figures were in a position to see the weapons used by the principal. These inferences would allow a jury to conclude that the two shadowy figures knew that the principal intended to commit a crime, the second element of joint venture. A jury could also reasonably infer from the position of the two

able and willing to help if necessary. We accordingly focus upon whether the evidence would permit a rational trier of fact to conclude beyond a reasonable doubt that it was the juvenile who was one of the two shadowy human forms.

The victim gave virtually no identifying information about the two shadowy figures lurking by his car. He did not know their height (except to say in the range of five feet), build, gender, clothing, or coloring. The juvenile concededly is in the range of five feet tall; so are the two females who escaped. That he is male, as was the assailant principal, may at first blush support the arguably common sensical conclusion that the three males committed the crime while the females stayed sedately in the background. It may well be the case that more adolescent males than females commit crimes, but no such evidence was admitted, even if such statistical information were relevant and admissible in the first instance. In the circumstances here, however, what might be thought common sense instead incorporates stereotypes and speculation; it does not support a permissible inference that it was the juvenile, rather than one of the females, who stood near the car door.

It is, then, as likely as not that the juvenile was one of the shadowy human forms. "When the Commonwealth's evidence is entirely circumstantial, a case cannot be proved if the evidence equally supports two inconsistent propositions." *Commonwealth* v. *White*, 422 Mass. 487, 494 (1996). Despite evidence of the juvenile's consciousness of guilt (shared by all of the occupants of the stolen car), and his association with people who may have committed armed robbery and carjacking (again, an association shared by all), the inference that the juvenile participated in the crime as one of the two shadowy figures is unwarranted. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 200 (1965). Here, as in *Commonwealth* v. *Latney*, 44 Mass. App. Ct. 423, 426 (1998), "any view of the Commonwealth's evidence, however favorable, still requires a leap of conjecture with respect to essential elements of the crime charged in order to obtain a conviction." The evidence was insufficient and the juvenile's motion for a required finding of not guilty should have been allowed.

We touch only briefly on the juvenile's other claim of error. Over objection, the Commonwealth introduced in evidence

shadowy figures that they were by agreement willing to help the principal in the commission of the crime, the third element of joint venture.

redacted tapes and transcripts of Schwartz's 911 telephone call to the police and the discussion between the police dispatcher and Officer Duran immediately thereafter. The dispatcher did not testify. The trial judge admitted the evidence for the limited and permissible purpose of establishing the time period between the initial 911 call and the response from Officer Duran, and gave appropriate limiting instructions after the tapes were played. The juvenile's contentions as to improper authentication, prejudicial hearsay, and violation of his right of confrontation are without merit.

*Judgments reversed.*

*Verdicts set aside.*