## COMMONWEALTH vs. JOHN ROSA.

No. 03-P-979.

Bristol. June 9, 2004. - December 3, 2004.

Present: CYPHER, SMITH, & DOERFER, JJ.

*Indecent Assault and Battery. Constitutional Law,* Vagueness of statute. *Due Process of Law,* Vagueness of statute. *Evidence,* Intent. *Intent. Practice, Criminal,* Instructions to jury.

The evidence at a criminal trial was sufficient to convict the defendant of indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B, where, when measured by common understanding and practices, the jury were warranted in finding that the defendant's conduct in thrusting his thumb into the victim's mouth past her teeth and making sexually suggestive remarks, considered in connection with the age disparity between the defendant and the victim, the difference in experience and sophistication, and the defendant's admissions to the police concerning his conduct, was conduct that was fundamentally offensive to contemporary moral values and that the common sense of society would regard as immodest, immoral, and improper [624-626]; moreover, the statute was not unconstitutionally vague as applied to the defendant [626-627].

At the trial of an indictment charging the defendant with indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B, the judge properly admitted in evidence the testimony of the victim and her mother as to what the victim thought the defendant meant when he made certain remarks, where the testimony, while offering some proof of the defendant's subjective intent, was probative of how his conduct would be viewed from an objective standpoint and whether it was violative of social and behavioral expectations; further, even if the admission of the testimony were error, it did not create a substantial risk of a miscarriage of justice where the defendant admitted to a police officer his intent in making the remarks. [627-628]

At the trial of an indictment charging the defendant with indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B, the judge properly instructed the jury that in determining whether the Commonwealth had met its burden in establishing the "indecent" element of the offense, they could consider the defendant's actions, including anything he may have said to the victim or the police. [628-629]

INDICTMENT found and returned in the Superior Court Department on May 17, 2002.

The case was tried before *Richard J. Chin*, J.

*James C. Rehnquist* for the defendant.

*Kevin Connelly*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A Bristol County grand jury returned two indictments against the defendant charging him with indecent assault and battery on a child under fourteen (subsequent offense), G. L. c. 265, § 13B, and assault with intent to rape a child under the age of sixteen, G. L. c. 265, § 24B. A jury trial was commenced in the Superior Court. At the conclusion of the Commonwealth's evidence, the judge allowed the defendant's motion for a required finding of not guilty on the charge of assault with intent to rape. The jury found the defendant guilty of the indecent assault and battery indictment, and after a jury-waived trial, the defendant was convicted of the subsequent offense portion of that indictment.

On appeal, the defendant claims that (1) the evidence was insufficient to sustain a conviction for indecent assault and battery; (2) G. L. c. 265, § 13B, is unconstitutionally vague as applied to him; (3) the testimony from three witnesses concerning the implied meaning of the defendant's question to the victim was inadmissible; (4) the judge erroneously instructed the jury as to the "indecent" element of the offense; and (5) his attorney was ineffective for failing to raise those claims at trial.

The jury could have found the following facts. On February 28, 2002, at about 3:00 P.M., the victim, an eleven year old girl, was playing basketball, alone, on a court located behind her grandmother's house. The court is approximately 100 feet from the driveway of the defendant's home. While the victim was playing basketball, the defendant, with his son, arrived home. The defendant's son went into the house and the defendant remained outside.

The defendant called out to the victim and asked whether the grandmother's dogs were outside. The victim responded no, and the defendant called her over to his driveway, asking if he could look at a scar on her lip. The scar, which was on the outer left portion of her upper lip, resulted from an encounter that the victim had had with a thorn bush, two weeks earlier. In response to the defendant's call, the victim walked to the grass at the

edge of the defendant's driveway. The defendant stuck his fingers in the victim's mouth and asked if it still hurt. The defendant then stepped away from the victim and looked around. No other adults or children were in the area.

The defendant went into his garage. He called the victim over to the garage, saying, "Let me see it again." She walked over to the garage, and the defendant then stuck his thumb in the victim's mouth, past her teeth. While the defendant's thumb was in the victim's mouth, he asked her, "Do you know how to suck on it?" The victim became nervous and backed away from him. The victim thought that he was talking about his "private area" and became scared. The defendant then asked the victim, "Do you mind?" The victim made up an excuse that she had to go home in order to do some homework and ran to her grandmother's home. After arriving there, the victim, who was crying, ran upstairs where she "spit up." Later that night, the victim told her mother what happened, and her parents took her to the police station where she filed a report.

The defendant was questioned by a police officer and admitted that he first put his finger in the victim's mouth, pulled it out, and inserted his thumb. The defendant stated that while his thumb was in the victim's mouth, he said to her "would she like to suck on it," "does she like to suck on it," and "does she like to make it wet." The defendant was asked if he was referring to his penis at that time and the defendant "dropped his head, . . . he began to nod . . . yes, and then looked back up at [the officer]." The defendant also told the officer that he intended to get the victim into the garage and if he had been able to do so, "he would continue to molest [the] child."

1. *Sufficiency of the evidence.* General Laws c. 265, § 13B, inserted by St. 1953, c. 299, states in pertinent part: "Whoever commits an indecent assault and battery on a child under the age of fourteen shall be punished . . . ." The defendant claims that, under the circumstances present here, the insertion of his thumb into the interior of the victim's mouth did not constitute an indecent assault and battery.

While the specific type of conduct that constitutes an indecent assault and battery is not defined in G. L. c. 265, § 13B, the

decisional law has set forth the type of conduct that forms the basis of a conviction under the statute.

The measure of indecency is "common understanding and practices." *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52, 59 (1982), quoting from *Commonwealth* v. *Jarrett*, 359 Mass. 491, 497 (1971). "A touching is indecent when, judged by the 'normative standard' of societal mores, it is 'violative of social and behavioral expectations,' in a manner 'which [is] fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper.' " *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. 313, 314-315 (1997) (citations omitted). "[T]he intentional, unjustified touching of private areas such as 'the breasts, abdomen, buttocks, thighs, and pubic area of a female' constitutes an indecent assault and battery." *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. 181, 184-185 (1991), quoting from *Commonwealth* v. *De La Cruz, supra.* Those areas are classified as sexual parts of the body. See *People* v. *Rivera*, 138 Misc. 2d 570, 571 (N.Y. Sup. Ct. 1988).

It is well established, however, that the above list of anatomical parts and areas is not intended to be exhaustive. *Commonwealth* v. *Castillo*, 55 Mass. App. Ct. 563, 566 (2002). In certain circumstances the intentional, unjustified, and nonconsensual touching of other parts of the body, those which we consider intimate parts, may also violate "our contemporary views of personal integrity and privacy." *Ibid.*, quoting from *Commonwealth* v. *Lavigne, supra* at 315. It is clear, however, that "intimacy, as regards parts of the body, must be viewed within the context in which the contact takes place." *People* v. *Rivera, supra.* The mouth and its interior has been held to be an intimate part of the body. See *ibid.* ("very few things can be more personal or private than the mouth," considering "that the vast majority of people are very discriminating in who they allow to touch; and in what they permit to enter this bodily orifice").

Further, in *Commonwealth* v. *Castillo, supra* at 565-567, the court rejected the defendant's suggestion that his conduct was offensive but not indecent and held that the evidence was sufficient to establish indecent assault and battery where the

defendant intentionally, unjustifiably, and without consent inserted his tongue into the victim's mouth.[1] In holding that the defendant's conduct constituted assaultive conduct that society deems indecent, the court pointed to specific circumstances such as the authority disparity between the defendant and the victim (the defendant was the stepfather of the victim's friend), the age disparity (the victim was fourteen years old and the defendant was in his mid-thirties), the obvious difference in experience and sophistication and that the touching was effected by a degree of force. *Id.* at 567.

"When evaluating evidence of alleged indecent behavior, we consider all of the circumstances." *Id.* at 566. In this matter, the circumstances included the several sexually suggestive inquiries by the defendant at the time he inserted his thumb into the victim's mouth, see *Commonwealth* v. *Mosby, supra* at 185, the force used to insert the thumb past the victim's teeth, the age disparity, the difference in experience and sophistication, and the defendant's admissions to the police concerning his conduct.

We hold that measured by "common understanding and practices," the jury were warranted in finding, under the circumstances in this case, that the defendant's conduct was conduct that is ". . . fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper." *Commonwealth* v. *Castillo, supra* at 565-566 (citations omitted). Therefore, the judge did not commit error in denying the defendant's motion for a required finding of not guilty.

2. *Fair notice.* The defendant argues that G. L. c. 265, § 13B, is unconstitutionally vague as applied to him because he did not have fair notice that his conduct could constitute a violation of the statute and subject him to criminal sanctions. The defendant cites *Commonwealth* v. *Arthur,* 420 Mass. 535, 540-541 (1995); *Commonwealth* v. *Quinn,* 439 Mass. 492, 499-501 (2003); and *Commonwealth* v. *Whiting,* 58 Mass. App. Ct. 918, 919 (2003), in support of his argument. Those decisions hold that even if the defendants' conduct did violate certain statutes, their convic-

---

[1]See *Commonwealth* v. *Mamay,* 407 Mass. 412, 418 (1990) (defendant doctor's insertion of his tongue into a patient's mouth constituted "one act of indecent assault and battery in this scenario").

tions were invalid because the defendants did not have fair notice that their conduct would subject them to criminal prosecutions.[2]

The test for vagueness as applied to the defendant's conduct requires that we examine the facts in the light most favorable to the Commonwealth. *Commonwealth* v. *Oakes*, 407 Mass. 92, 95 (1990).

Here, the defendant thrust his thumb into the victim's mouth and accompanied that conduct with sexually suggestive remarks. It is clear from the defendant's admissions to the police that he was attempting to entice a young girl into playing a game of pseudo-fellatio. Every person of average intelligence would know that such conduct is "fundamentally offensive to contemporary moral values . . . [and] regard[ed] as immodest, immoral and improper" and thus, constitutes an indecent assault and battery. *Commonwealth* v. *Lavigne*, 42 Mass. App. Ct. at 314-315, quoting from *Commonwealth* v. *Mosby*, 30 Mass. App. Ct. at 184.

We reject the defendant's claim that G. L. c. 265, § 13B, was constitutionally vague as applied to him.

3. *Admission of certain portions of victim and her mother's testimony.* The defendant claims that it was error to allow the victim and her mother to testify as to what the victim thought the defendant meant when he asked the victim if "she knew how to suck on it." The victim's response was that the defendant was talking about his private area. The victim's mother, testifying as a fresh complaint witness, repeated the testimony about what the victim thought the defendant meant. There was no objection to the testimony. Therefore, we examine the testimony to ascertain whether its admission was error and, if so, whether it produced a substantial risk of a miscarriage of justice. *Commonwealth* v. *Williams*, 56 Mass. App. Ct. 337, 341-342 (2002).

The defendant argues that because indecent assault and battery is a strict liability crime and the testimony was directed to the defendant's subjective intent, it was irrelevant and highly

---

[2]In *Commonwealth* v. *Arthur, supra,* the statute involved was G. L. c. 272, § 53 (indecent exposure). In *Commonwealth* v. *Quinn, supra,* and *Commonwealth* v. *Whiting, supra,* the statute involved was G. L. c. 272, § 16 (open and gross lewdness).

prejudicial. In addition, he argues that the evidence was unduly speculative.

The evidence, while offering some proof of the defendant's subjective intent, is probative of how his conduct would be viewed from an objective standpoint and whether it is "violative of social and behavioral expectations." *Commonwealth* v. *Lavigne, supra* at 314 (citation omitted). In *Commonwealth* v. *Lavigne,* the victim testified that the defendant touched his inner thigh and massaged the area in a suggestive manner "like I'd give my girlfriend." *Id.* at 313. The court held that testimony, which related the victim's subjective understanding of the contact as being of a sexual nature, was properly factored into the trier of fact's determination whether the conduct constituted an indecent touching. *Id.* at 316. See *Commonwealth* v. *Mosby, supra* at 185 (nonconsensual touching coupled with sexually suggestive comments warranted the jury in finding that the defendant committed indecent assault and battery). Here, the testimony at issue was similarly relevant and properly admitted as part of all of the circumstances surrounding the act and therefore could be considered in determining whether the touching was objectively indecent. See *Commonwealth* v. *Lavigne, supra.*

Moreover, the defendant admitted to a police officer that he was referring to his penis when he asked the victim "if she knew how to suck on it." Therefore, even if it was error to admit the victim and her mother's testimony, it did not amount to a substantial risk of a miscarriage of justice.[3]

4. *The jury instruction issue.* The judge charged the jury that "[i]n determining whether the Commonwealth has met its burden in establishing the indecent element of this offense, you may consider the defendant's alleged actions, including anything he may have said."

The defendant did not object to the instruction. On appeal,

---

[3]The defendant also claims that it was error to allow a police officer to testify that the defendant told him that he would have continued to molest the victim if she had gone into the garage with him.

The defendant's strategy was to attack the credibility of the police and also to try to show that the encounter with the victim was entirely innocent. The evidence was admissible to counter the defendant's view of the encounter.

the defendant argues the instruction was error that created a substantial risk of a miscarriage of justice.

"Our duty is to look at 'the charge as a whole to determine whether it fairly instructs the jury.' " *Commonwealth* v. *Cook*, 438 Mass. 766, 772, cert. denied, 540 U.S. 850 (2003), quoting from *Commonwealth* v. *Richardson*, 429 Mass. 182, 185 (1999). The instruction was proper. There is no question that a jury, in determining whether the defendant was guilty of the charge, could consider the defendant's statements made at the time of his encounter with the victim and those statements he made to the police. See *Commonwealth* v. *Castillo*, 55 Mass. App. Ct. at 567.

5. *Ineffective assistance of counsel.* The defendant claims that trial counsel was ineffective because he did not preserve the errors on the issues raised above.

Because we find no error in trial counsel's performance, we reject the defendant's claim.

*Judgment affirmed.*