NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-202                                        Appeals Court

A.P.  vs.  M.T.

No. 16-P-202.

Essex.      January 6, 2017. - September 1, 2017.

Present:  Kafker, C.J., Hanlon, & Agnes, JJ.[1]


Civil Harassment.  Harassment Prevention.  Evidence, Cross-
    examination, Identification.  Identification.


Complaint for protection from harassment filed in the Essex County Division of the Juvenile Court Department on October 30, 2015.

The case was heard by Mark Newman, J.


Benjamin L. Falkner for the defendant.


HANLON, J.  After a hearing, a Juvenile Court judge extended a civil harassment order, pursuant to G. L. c. 258E, against a juvenile (the defendant, M.T.) who, along with another boy, was accused of committing an indecent assault and battery

_____

[1] Chief Justice Kafker participated in the deliberation on this case and authored the concurring opinion while the Chief Justice of this court, prior to his appointment as an Associate Justice of the Supreme Judicial Court.

on a four year old neighbor girl (the plaintiff, A.P.). M.T. now appeals the ex parte order and the extension, arguing that (1) the evidence was insufficient to support the issuance of the order; (2) the judge abused his discretion in limiting the cross-examination of A.P.'s mother (mother); and (3) the mother's in-court identification of M.T. and the other boy was improper. M.T. asks this court to vacate the order and expunge all records or, in the alternative, to vacate the order and remand for further proceedings.[2] We affirm.

Background.[3] A.P. and M.T. and their families live on a cul-de-sac. Their properties border one another, and are separated by a fence. The other boy's property is in the same cul-de-sac, but does not border A.P.'s property. At the time of the incident, A.P. was four years old and had developmental delays related to speaking and expression.

At the ex parte hearing, A.P.'s father (father) appeared alone and testified that he was at work when he received a

---

[2] The order was issued against both boys, but only M.T. filed an appeal. The record does not reveal the age of either boy. At oral argument, M.T.'s counsel informed us that his client was eight years old.

[3] The facts are drawn from testimony and evidence presented at the ex parte hearing and the hearing after notice. The same judge presided over both hearings and, at the outset of the hearing after notice, counsel for M.T. and the other boy indicated that they had reviewed the ex parte order and the mother's affidavit.

telephone call from the mother.[4]  The father summarized the

events as the mother had relayed them to him:

> "[A.P.] was in the backyard in our fenced-in yard
> playing.  We have a swing set, jungle gym, and some
> toys.  And my wife's Vietnamese.  She's pretty
> protective, generally won't let the kids out of her
> sight for more than [ten] to [twenty] minutes, if
> that.  So I don't know how long she was out there.
>
> "But my wife went to the back door and hollered
> [A.P.]'s name.  And our jungle gym sort of blocks --
> there's a blind spot right behind the jungle gym.  And
> [A.P.] came running from behind the jungle gym holding
> her underwear and no clothes.  She was naked.  And the
> two boys jumped the fence and just ran back to their
> homes."

Based on the father's testimony, the judge issued an ex parte

order and scheduled a hearing after notice.

At the hearing after notice before the same judge, the

mother testified with an interpreter and was cross-examined; we

summarize her testimony.[5]  She explained that she knew the boys

because they had played with A.P. and also with a third boy who

had lived in her home; that boy had since returned to his home

in Vietnam.  On the day of the incident, she was painting a door

when she heard her daughter's voice.  "I heard her excitement

because she loves to play with [M.T.].  And then I looked . . .

---

[4] The father's testimony essentially tracks the mother's
affidavit, filed at the time of the hearing on the ex parte
order.

[5] The mother's direct testimony was brief, occupying perhaps
twelve pages of transcript, including arguments of counsel at
various points.

out through the door, and I saw [M.T.] climbing the fence. . . . So [A.P.] pushed the door open and the two boys came . . . into the house." The mother said that the boys had climbed the fence before "just like in Vietnam, you know. That's what kids do." When M.T. asked about the third boy, she told the two boys that he had gone back to Vietnam.

The boys played in the house for a few minutes, and then went outside. A.P. asked to follow the boys and the mother initially said no. The mother stated that she was reluctant to agree because the boys "play so rough and they make her cry." However, A.P. cried and begged to go; eventually, the mother allowed A.P. to follow the boys. "So I told her put on your shoes and your jacket and go outside because it's cold outside and Mommy will join you right away."[6]

The mother testified that, after agreeing to let A.P. go, she did not "feel . . . good" about the situation and, eventually, decided to go outside herself. "[S]o I went and washed my hands . . . [and] after I washed my hands, I didn't even get out to the back door . . . and [A.P.] came running inside. She slammed the door and she said, 'Mom, help me, help me.'" A.P. was "holding onto her underwear, her panty" and wearing nothing else. "So I told her it's cold outside, why did

---

[6] When A.P. went outside "she was completely dressed. She had a dress on and I put on her shoes and her jacket. She knew that it was cold."

you take -- remove your jacket." When the mother went outside to determine what had happened, she saw the boys running away. "As they were running, they turned back to look at us, and I just felt funny about that." A.P.'s clothes were piled outside near her toys. Inside, the mother inspected A.P. and saw "some spot and stain" on her underwear.

The mother telephoned the father and, when he told her that the police were on their way, she took photographs of her daughter. The photographs were admitted in evidence at the hearing, and we have seen them as well. There is a photograph of A.P. from earlier in the day when she went to school; in the photograph, she is fully dressed in a pink dress, a white sweater, and pink shoes, with her arms outstretched in a yard with fallen leaves. As the father testified, "And then later on when the incident took place, she was still wearing that dress but with another jacket." Taken after the incident, three other photographs show A.P. lying with her legs spread and wearing only underpants. She was smeared with mud on her bare feet, her legs and knees, and on her underwear between her legs, in the area of her bottom up into her crotch area. The mother testified that she tried to ask A.P. what had happened, but the four year old would not say anything beyond "that person, that person." In addition, the father told the judge that a doctor's

report included observations of fresh abrasions and bruising on A.P.'s body.[7]

The judge then asked the mother if she could identify the two boys from that day. That exchange, with the defendants' objections, transpired as follows:

Judge: "Okay. And you described seeing two boys that day? Do you --"

Mother: "That's right."

Judge: "Do you see those two boys in the courtroom today?"

Counsel for the other boy: "Objection."

Mother: "One here, one here."

Counsel for M.T.: "Objection, Judge."

Judge: "Okay. I'll note your -- "

Mother: "[M.T.] was wearing an orange-color outfit, and I'm not sure what this -- his name. He was wearing something gray maybe, but I didn't pay much attention to what he was wearing. Because [M.T.] actually said hi."

Counsel for M.T.: "Judge, I object. That couldn't be a more suggestive identification."

Judge: "Right. But, again, this is not a penal or a criminal hearing. It's a civil hearing."

On cross-examination, M.T.'s attorney elicited the following testimony from the mother: (1) she never saw M.T. or

---

[7] The father told the judge at the hearing after notice, "My pediatrician called me as I was driving in saying they've got a copy of the hospital report, but it was too late because I was coming here. I'm going to go get that report when I leave."

the other boy touch A.P. or remove her clothing; (2) it was uncommon for A.P. to take off her own clothes and she only does so when she takes a bath; "[e]ven then if you try to remove her underwear she would cry"; (3) the mother's prior testimony about A.P. playing "rough" referred to playing on the slide and playing on the father's shoulders;[8] (4) A.P. rarely comes in dirty from playing outside and when she does she tells her mother that she is dirty and asks her mother to change her clothes.  After M.T.'s attorney cross-examined the mother for a relatively brief period of time (approximately four pages of transcript), the judge cut off the cross-examination, explaining that "this is a very limited hearing" and that it was customary to hear from both parties but not to have examinations.  M.T.'s attorney objected to the limitation and also objected to the admission of evidence that violated "the rules of evidence."

The other boy's attorney continued the line of questioning relating to whether A.P. had a history of getting dirty while playing outside.  The judge then asked if there was any evidence or testimony from the defendants, and both counsel responded in the negative.  The judge heard final arguments and

---

[8] On cross-examination, the mother clarified that, "playing rough doesn't mean that she likes to . . . [take] off her clothes. . . .  She likes to play on the slide.  So when I say playing rough, meaning, like -- for example, when she plays with Daddy, Daddy would put her on Daddy's shoulder, and then they turn around like that.  We don't play like that in Vietnam, and that I meant rough."

recommendations from both defendants' attorneys; each argued that there was insufficient evidence to support an extension of the order.

At the end of the hearing, the judge described the evidence as "circumstantial," but noted that he found the photographs "compelling" and that he had made copies for the record. He also considered "the child's state of mind at the time and her reaction to the circumstances and the fact that [the] mother observed this." He concluded there was "sufficient evidence to issue a civil harassment order [for] indecent assault and battery on a child under the age of [fourteen] where consent is not a defense [and] the circumstantial evidence here is sufficient to support it."

Discussion. We review harassment prevention orders under G. L. c. 258E to determine "whether the judge could find, by a preponderance of the evidence, together with all permissible inferences," that the defendant had committed one or more of the enumerated sex crimes or three or more specific acts of wilful or malicious conduct. Gassman v. Reason, 90 Mass. App. Ct. 1, 7 (2016). See F.A.P. v. J.E.S., 87 Mass. App. Ct. 595, 598-599 (2015).

Harassment prevention orders under G. L. c. 258E were "intended to protect victims who could not legally seek protection under G. L. c. 209A," when the victims did not

satisfy the relationship requirement for jurisdiction under

c. 209A.  Seney v. Morhy, 467 Mass. 58, 60 (2014), citing

O'Brien v. Borowski, 461 Mass. 415, 419 (2012).  As a result,

the language in c. 258E is "analogous to the language found in

c. 209A."  J.S.H. v. J.S., 91 Mass. App. Ct. 107, 109 (2017).

For this reason, for the most part, both the Supreme Judicial

Court and this court have applied the case law relating to

c. 209A to cases arising under c. 258E.  See O'Brien, supra at

418-420 (noting distinctions between c. 209A and c. 258E);

Seney, supra at 62 (following case law related to c. 209A when

determining proper appellate procedure for c. 258E orders);

J.S.H., supra at 109-112 (applying c. 209A expungement standards

to c. 258E proceedings).  In addition, this court has cited the

Guidelines for Judicial Practice:  Abuse Prevention Proceedings

(guidelines), which apply to c. 209A orders, when analyzing

c. 258E orders.  See, e.g., F.A.P., supra at 601 n.14 ("[W]e see

no reason why the [guidelines] should not apply equally in

harassment order proceedings, absent some issue particular to

harassment orders").  Furthermore, the Massachusetts Guide to

Evidence applies the same evidentiary standards to c. 209A and

c. 258E orders.  See Mass. G. Evid. § 1106 (2017).

The purpose of proceedings under c. 258E, like those under

c. 209A, is "protective, not penal," A.T. v. C.R., 88 Mass. App.

Ct. 532, 540 (2015), and in these cases, "the rules of evidence

need not be followed, provided that there is fairness in what evidence is admitted and relied on." Frizado v. Frizado, 420 Mass. 592, 597-598 (1995). In reviewing the issuance of the c. 258E order in this case, we have in mind the mandate that abuse prevention proceedings should be as "expeditious and informal as reasonably possible." Zullo v. Goguen, 423 Mass. 679, 681 (1996), citing Frizado, supra at 598.

We also note that, although M.T.'s age, eight years old, certainly is concerning, the Legislature explicitly provided that the "juvenile court department shall have exclusive jurisdiction" over harassment prevention order proceedings when a defendant is under the age of eighteen. G. L. c. 258E, § 2, as amended by St. 2014, c. 284, § 74. "As a result, it is fair to conclude that, when the Legislature deliberately entrusted to the trial court department most experienced with juveniles exclusive authority to issue harassment orders against them, it had young people's limitations and abilities particularly in mind." A.T., 88 Mass. App. Ct. at 539. Compare Commonwealth v. Ogden O., 448 Mass. 798, 803 (2007) ("[T]he Commonwealth has developed a system, set forth by legislative enactment in G. L. c. 119, §§ 52-84, for dealing with delinquent children . . . in a manner that affords them greater protections than those afforded adults in the traditional criminal justice system. See Commonwealth v. Walter R., [414 Mass. 714, 718 (1993)]. See

also R.L. Ireland, Juvenile Law § 1.3 [2d ed. 2006] [discussing philosophy of delinquency proceedings].  This system has rendered a defense of incapacity based on youth, to the extent that it ever may have existed in the Commonwealth, inapplicable to current juvenile proceedings").  In a footnote, the Ogden O. court continued, supra at 803 n.4, "A '[d]elinquent child' is 'a child between seven and seventeen who violates any city ordinance or town by-law or who commits any offence against a law of the commonwealth.'  G. L. c. 119, § 52."

General Laws c. 258E provides a number of definitions of "harassment."[9]  The second definition "applies to situations where, as here, a defendant allegedly committed one or more acts of sexual misconduct.  G. L. c. 258E, § 1 (definition of 'harassment,' subsection [ii])."  F.A.P., 87 Mass. App. Ct. at 599.  "Under this definition, . . . a plaintiff can prove that a defendant committed any of [ten] specifically enumerated sex

---

[9] The first definition requires at least three acts of "willful and malicious conduct aimed at a specific person committed with the intent to cause fear, intimidation, abuse or damage to property," and that in fact causes fear, intimidation, abuse, or damage to property.  G. L. c. 258E, § 1, inserted by St. 2010, c. 23.  In addition, an act "that constitutes a violation of section . . . 43 [stalking] or 43A [criminal harassment] of chapter 265" meets the statute's definition of "[h]arassment."  Ibid.  None of these other definitions is at issue here.

crimes, including -- as relevant here," indecent assault and battery.[10]  Ibid.

a.  Sufficiency of the evidence.  M.T. argues first that the evidence was insufficient to prove, by a preponderance of the evidence, that M.T., either alone or with the other boy, committed an indecent assault and battery on A.P.[11]  See id. at 599-600.

> "This court . . . has stated:  The test for indecent assault and battery . . . is an objective one that is bounded by contemporary moral values . . . .  The measure of indecency is common understanding and practices. Commonwealth v. Conefrey, 37 Mass. App. Ct. 290, 300 (1994), S.C., 420 Mass. 508 (1995), quoting from Commonwealth v. De La Cruz, 15 Mass. App. Ct. 52, 59 (1982).  A touching is indecent when, judged by the normative standard of societal mores, it is violative of social and behavioral expectations, Commonwealth v. Gallant, 373 Mass. 577, 580-581, 589 (1997), in a manner which [is] fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper.  Commonwealth v. Mosby, 30 Mass. App. Ct. 181, 184 (1991), quoting from Commonwealth v. Perretti, 20 Mass. App. Ct. 36, 43 (1985). So defined, the term indecent affords a reasonable opportunity for a person of ordinary intelligence to know what is prohibited.  Commonwealth v. Conefrey, 37 Mass. App. Ct. at 302, quoting from Commonwealth v. Jasmin, 396 Mass. 653, 655 (1986)."

---

[10] "Whoever commits an indecent assault and battery on a child under the age of 14 shall be punished."  G. L. c. 265, § 13B, as appearing in St. 2008, c. 205, § 1.

[11] Proof beyond a reasonable doubt that M.T. committed the crime is left for any delinquency proceedings.  F.A.P., supra at 599.  Furthermore, in this form of harassment, "[p]roof that the defendant intended to instill fear, and in fact did so, would be wholly unnecessary."  Ibid.

Commonwealth v. Castillo, 55 Mass. App. Ct. 563, 565-566 (2002), quoting from Commonwealth v. Lavigne, 42 Mass. App. Ct. 313, 314-315 (1997) (quotations omitted).  Here, based on the evidence presented, it was reasonable for the judge to conclude the standard was met.

As noted, the evidence the judge considered included the mother's testimony, photographs of A.P. before and after the incident, and the father's statement regarding the results of the doctor's examination.  If the judge credited the mother's testimony, and his findings and conclusion at the end of the hearing indicate that he did, taking that testimony together with reasonable inferences, the judge reasonably could have concluded that it is more likely than not that M.T. committed an indecent assault and battery against A.P. by removing her clothing or forcing her to remove it herself.  Because she was four years old, consent was not an issue.  See Commonwealth v. Knap, 412 Mass. 712, 714-715 (1992).

The mother testified that it was cold outside and that A.P. was fully clothed when she went to play; A.P. was outside alone with the boys; she never had removed her clothing while playing outside; she ran into the house with nothing but underpants on, holding onto them, and crying, "Mommy, help me."  When asked what had happened, A.P. could only say, "[T]hat person."  She had mud on the crotch of her underpants and smeared over her

bare feet and legs; a doctor found evidence of fresh abrasions and bruising.

Our case law supports a conclusion that taking a child's clothing off or forcing her to do so in these circumstances constitutes an indecent assault and battery. See Commonwealth v. Kopsala, 58 Mass. App. Ct. 387, 393 (2003) (upholding conviction of indecent assault and battery when defendant "pulled up the victim's shirt, exposing her breasts, unbuttoned her jeans and pulled them off, and removed her panties"); Commonwealth v. Davidson, 68 Mass. App. Ct. 72, 74 (2007) ("[O]ur cases do not require that the defendant himself perform the touching. Thus in Commonwealth v. Nuby, 32 Mass. App. Ct. 360, 362 [1992], we held that a defendant who forced the victims 'to fondle their mother's breasts' was guilty of indecent assault and battery upon two children under the age of fourteen under G. L. c. 265, § 13B. We also held adequate the judge's instruction that the perpetrator need not himself perform the indecent touching if he directs or commands the victim to touch a third person in a manner that would be offensive. Id. at 363-364").

In Commonwealth v. Portonova, 69 Mass. App. Ct. 905, 905 (2007), the basis for the indecent assault and battery charge was a claim that the defendant had "direct[ed] the victim to rub her vagina." We rejected "[t]he defendant's argument that G. L.

c. 265, § 13F [the statute proscribing indecent assault and battery on a mentally retarded person], proscribes only those forced offensive touchings in which the perpetrator directly engages in the 'sexual contact' that causes the offensive touching."  Ibid.  We noted that that argument "has been rejected by our cases," citing Nuby, supra; Davidson, supra.  "In Davidson, we pointed out that 'our cases do not require that the defendant himself perform the touching.' . . .  As in Nuby and in Davidson, '[t]he gravity of the conduct rises to the level which the[] statute[] [was] designed to prohibit.'"  Portonova, supra at 905-906 (citations omitted).

Even if M.T. did not himself take off A.P.'s clothing or order her to do so, but merely stood by while the other boy did so and then ran away with him, M.T.'s presence during the act and, in particular, in running away with the other boy are evidence that he shared the other boy's purpose.  See Commonwealth v. Figueroa, 451 Mass. 566, 579 (2008) ("'It is well settled that evidence of flight may be introduced to show consciousness of guilt.'  Commonwealth v. Carita, 356 Mass. 132, 140 [1969]").  It is true that "[e]vidence that an accused associated with persons who committed the crime does not 'justify an inference that [he also] participated in [its] commission.'"  Commonwealth v. Saez, 21 Mass. App. Ct. 408, 410 (1986) (citation omitted).  However, other actions can support a

conclusion that a defendant participated in the commission of the crime under a joint venture theory.

To prove joint venture, it must be shown "that the defendant 'knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense.'"  Commonwealth v. Colton, 477 Mass. 1, 11 (2017), quoting from Commonwealth v. Zanetti, 454 Mass. 449, 466 (2009). "There is no requirement . . . [to] prove precisely what role the defendant played -- whether he acted as a principal or an accomplice (or joint venturer)."  Commonwealth v. Silva, 471 Mass. 610, 621 (2015).

Moreover, joint venture can be proved with circumstantial evidence, including flight from the scene together.  See Commonwealth v. Garcia, 470 Mass. 24, 31-32 (2014); Commonwealth v. LeClair, 68 Mass. App. Ct. 482, 489 (2007).  Finally, of course, "[a] person's knowledge or intent is a matter of fact, which is often not susceptible of proof by direct evidence, so resort is frequently made to proof by inference from all the facts and circumstances . . . .  The inferences drawn by the [fact finder] need only be reasonable and possible and need not be necessary or escapable."  Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

The evidence established that the two boys visited A.P.'s home together; all three children were outside playing alone

together for a very short period of time; A.P. came running in, crying for help and without most of her clothing; when the mother went to look for A.P.'s clothing, she saw both boys running away; they looked back at her, but kept on running.

We acknowledge that flight from a scene by young children may call for a different analysis from that of flight by adults. Here, however, the two boys knew both the mother and A.P. and had been in their home only moments earlier; there is no evidence that they had removed any of their own clothes or had gotten particularly muddy in the very short period of time that they were alone with A.P. Combined with A.P.'s apparent distress and statements, "[H]elp me" and "[T]hat person," after the mother prodded her for information, the evidence was sufficient for the judge to conclude, under a preponderance of the evidence standard, that at least one of the boys either took off A.P.'s clothes or commanded her to do so, and put her or ordered her on to the muddy ground while the other aided in some manner. See Commonwealth v. Dixon, 79 Mass. App. Ct. 701, 711 (2011) (joint venture may be shown by evidence that each defendant "was willing and available to assist if necessary" [citation omitted]).

The facts here are not dissimilar to those found sufficient to support a harassment prevention order in F.A.P., 87 Mass. App. Ct. at 600. In that case, "there was evidence that a seven

year old girl suffered a labial tear directly after having been alone with a defendant who had previously engaged in an indecent touching of her. That evidence was sufficient to support a finding, by a preponderance of the evidence, that the defendant raped the plaintiff." Ibid. As here, the child plaintiff did not testify and, in fact, this court ruled that, notwithstanding the fact that the judge in that case erroneously had excluded the plaintiff's mother's report of what the child had told her, the admitted evidence was sufficient. Ibid.

We also have in mind that, in this civil case, neither boy testified at the hearing. While "a defendant's failure to testify cannot be used to justify the issuance of an abuse prevention order until a case is presented on other evidence," Frizado, 420 Mass. at 596, "[a]n inference adverse to a defendant may properly be drawn . . . from his or her failure to testify in a civil matter such as this, even if criminal proceedings are pending or might be brought against the defendant. See McGinnis v. Aetna Life & Casualty Co., 398 Mass. 37, 39 (1986); Commonwealth v. United Food Corp., [374 Mass. 765], 771-772 [1978]. The fact that the defendant may refuse to testify on the ground of self-incrimination does not bar the taking of an adverse inference." Frizado, supra. See S.T. v. E.M., 80 Mass. App. Ct. 423, 429 (2011). For these reasons, we

conclude that there was sufficient evidence to support the extension of the ex parte order.

b. Cross-examination. M.T. also argues that the judge abused his discretion when he limited cross-examination of the mother. While it is true that a defendant has a "general right" to cross-examine witnesses against him, a judge may "limit cross-examination for good cause in an exercise of discretion." Frizado, supra at 597. Furthermore, a judge "should not permit the use of cross examination for harassment or discovery purposes [although] each side must be given meaningful opportunity to challenge the other's evidence." Id. at 598 n.5, citing Draft Standards of Judicial Practice, Abuse Prevention Proceedings (Dec., 1994) (eventually adopted, with amendments, as the guidelines).

Here, the judge allowed cross-examination, and was within his discretion to end it. Contrast C.O. v. M.M., 442 Mass. 648, 658 (2004), where "the issue whether to limit cross-examination was never reached by the judge because he allowed no cross-examination at all." The boys' attorneys collectively elicited testimony from the mother regarding A.P.'s clothing habits and playing style, and they explored possible alternative explanations for why A.P. came in the house wearing only her underwear and covered in mud. When the judge cut off M.T.'s attorney's cross-examination, the judge said, sua sponte, "I'll

note your objection because this is a very limited hearing." When M.T.'s counsel asked to be heard further, the judge agreed, and counsel argued only that "there is no case law anywhere to suggest that these are limited hearings and that the Defense isn't entitled to a full cross-examination.  There is no case law anywhere that suggest[s] the rules of evidence don't apply to this proceeding."[12]  There was no offer of proof as to what any further cross-examination would have entailed.

Counsel for the other boy was then permitted to cross-examine the witness and, apparently, was permitted to ask as many questions as he liked.[13]  In addition, neither attorney offered any other evidence after the other boy's attorney finished his cross-examination of the mother.  Looking at the record as a whole, it is clear that both boys' attorneys were given a meaningful opportunity to cross-examine the mother and to challenge the evidence.  See F.A.P., 87 Mass. App. Ct. at 600-601.

---

[12] Counsel acknowledged that the Massachusetts Guide to Evidence noted that "the rules of evidence don't apply to 209A hearings," but added, "This is not a 209A hearing. . . .  The rules of evidence apply to all hearings in Massachusetts except for those that are specifically exempted under the Mass. Guide to Evidence, and this is not one of those."  Counsel was mistaken.

[13] That cross-examination occupied approximately one page of transcript.  While the judge may have interrupted when he said, "Okay.  Thank you," counsel did not object and, like M.T.'s counsel, made no offer of proof about what else he would have asked.

c. In-court identification. Finally, M.T. argues that the in-court identification was unreliable and unnecessarily suggestive and should not have been admitted absent "good reason," as required by Commonwealth v. Crayton, 470 Mass. 228, 241 (2014). In Crayton, the court said, "Where an eyewitness has not participated before trial in an identification procedure, we shall treat the in-court identification as an in-court showup, and shall admit it in evidence only where there is 'good reason' for its admission." Ibid. However, Crayton was a criminal case, and the court there expressly refused to decide whether Crayton would apply to civil cases. See id. at 241 n.16.

Furthermore, in Crayton, the court explained that one good reason to permit an in-court identification, with no prior identification procedure, would be "where the eyewitness was familiar with the defendant before the commission of the crime, such as where a victim testifies to a crime of domestic violence." Id. at 242. Here, the mother testified that she knew both boys because they had visited her home in the past and had played with her daughter and with the third boy in her home. Indeed, one of the boys lived next door to her. She recognized them both as they climbed over the fence and came into her house when A.P. opened the door. She permitted her daughter to go outside to join them in her yard, and she saw them running away.

As a result, there was good reason to permit the in-court identification of both boys.

<u>Harassment prevention order affirmed</u>.

KAFKER, C.J. (concurring).  I concur in the result in this very difficult harassment prevention order case because I believe that there is sufficient evidence, albeit barely, for a Juvenile Court judge to find by a preponderance of the evidence that M.T. committed an indecent assault and battery as a joint venturer.  I write separately, however, to stress the importance of M.T.'s very young age -- he was apparently only eight years old at the time of the incident -- and how that age complicates the analysis and distinguishes this case from those on which the majority relies that involve adults.  I am also troubled by how little evidence we have of what occurred here.  We have no testimony about what the three children were doing when they went outside to play, how or by whom A.P.'s clothes were removed, what M.T. himself did, or the age of the other boy.  Nevertheless, I conclude that the combination of the removal of A.P.'s clothes; her distress following the incident; the obviously rough physical treatment of her by the boys while they were playing outside, as demonstrated by the photographs of her; the father's statements about the bruises and abrasions on A.P.'s body;[1] and the boys' running away together and looking back at the mother is sufficient to support the order and the extension.

---

[1] The father stated in his affidavit accompanying the application for the G. L. c. 258E order that a hospital found "several bruises and abrasions on [A.P.'s] body."

Indecent assault and battery on a child, G. L. c. 265, § 13B, requires proof of an "indecent" touching. Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 624 (2004). "A touching is indecent when, judged by the normative standard of societal mores, it is violative of social and behavioral expectations, in a manner which [is] fundamentally offensive to contemporary moral values . . . [and] which the common sense of society would regard as immodest, immoral and improper." Id. at 625 (quotation omitted). "When evaluating evidence of alleged indecent behavior, we consider all of the circumstances" (emphasis supplied). Id. at 626 (citation omitted). This includes the ages of the participants, any "age disparity" between them, "difference[s] in [their] experience and sophistication," and any "authority disparity" between them. Ibid. See Commonwealth v. Castillo, 55 Mass. App. Ct. 563, 567 (2002).

We therefore must consider M.T.'s very young age in determining whether his alleged acts are indecent, or "fundamentally offensive to contemporary moral values." Rosa, 62 Mass. App. Ct. at 625 (citation omitted). Most of the cases relied upon by the majority in concluding that M.T. committed an indecent assault and battery involve adults.[2] Adult cases (with

_____

[2] The majority also relies on F.A.P. v. J.E.S., 87 Mass. App. Ct. 595 (2015), which I address in note 5, infra.

child victims) are different, as they involve an age and an authority disparity and differences of experience and sophistication that are not present here.[3]  See, e.g., Castillo, 55 Mass. App. Ct. at 567 (noting "considerable age disparity," "obvious disparity in experience and sophistication," and "authority disparity" in concluding that thirty year old man committed indecent act by forcing his tongue into fourteen year old girl's mouth; defendant was stepfather of victim's friend); Rosa, supra at 626 (noting "age disparity" and "difference in experience and sophistication" in concluding that man committed indecent act by putting finger in eleven year old girl's mouth); Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307, 309 (2005) (man in his thirties committed indecent act by kissing twelve year old niece due to "the age difference . . . and [the defendant's] position of familial authority over her"; "an unwanted kiss on the mouth has been held to constitute indecent conduct . . . when coupled with surreptitiousness and a considerable disparity in age and authority between the perpetrator and the victim" [emphasis supplied]); Commonwealth v. Miozza, 67 Mass. App. Ct. 567, 572 (2006) (noting ages, age

---

[3] I recognize that there is an age disparity between an eight year old child and a four year old child.  However, this is not the "considerable" disparity of experience and sophistication, particularly regarding sexual matters, Castillo, 55 Mass. App. Ct. at 567; Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307 (2005), that is emphasized in the indecency cases.

disparity and "position of authority" in concluding that thirty year old "close family friend" committed indecent act by kissing girls younger than age eleven; "the defendant's behavior violated clearly delineated and accepted societal expectations governing relationships between adults and children, and was therefore 'indecent'" [emphasis supplied]).

This court has also held that § 13B is not unconstitutionally vague "[b]ecause a person of average intelligence can be expected to be able to identify [indecent] conduct," Miozza, 67 Mass. App. Ct. at 571, an assumption that must be considered in proper context when dealing with very young children. See Commonwealth v. Lavigne, 42 Mass. App. Ct. 313, 315 (1997) ("the term 'indecent' affords a 'reasonable opportunity for a person of ordinary intelligence to know what is prohibited'" [citation omitted]).

If M.T. were an adult, or even an older teenager, I would have no trouble concluding that the actions alleged in this case are indecent, understood as such by the perpetrator, and recognized by society at large. When the defendant is an eight year old child, however, and the crime is indecent assault and battery on another child, the inquiry is much more complicated. I understand that a child of this age should know that treating another child roughly and removing her clothing is inappropriate and should result in severe parental discipline and other types

of corrective action, including counselling.  But what an eight year old child can reasonably be expected to understand beyond that on these facts, and whether our society would consider such behavior by a young child to be "fundamentally offensive to contemporary moral values," is a very different question.  Rosa, 62 Mass. App. Ct. at 626, quoting from Castillo, supra at 566.  It seems to me that a young child would have difficulty recognizing that these actions -- particularly if the children were only "roughhousing" -- are indecent or immoral, and that society would acknowledge that difficulty.  See Adoption of Olivette, 79 Mass. App. Ct. 141, 150 (2011) (eight year old exhibited "age-inappropriate awareness of sexual matters").  While very young children may be expected to recognize more obvious harms and risks, such as those associated with fire, their ability to understand inappropriate sexual contact cannot be so assumed.[4]  Compare Commonwealth v. Ogden O., 448 Mass. 798,

---

[4] The case law also provides very little guidance on how to review the criminality of such behavior by a very young child. For older adolescents, we have simply recognized their differences from adults and taken them into account, at least for sentencing purposes.  See generally Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 660 (2013), S.C., 471 Mass. 12 (2015).  See also Commonwealth v. Mogelinski, 466 Mass. 627, 647 (2013) ("Adolescents are socially, emotionally, and cognitively different from adults" [citation omitted]). Other States and commentators have gone further.  See generally In re T.S., 133 N.C. App. 272, 276-277 (1999) (reversing adjudication of delinquency of nine year old boy for lewd act on three year old boy; "[A] lewd act by adult standards may be innocent between children . . . .  Adults can and should be

802 (2007) ("Nothing in the record suggests that the [ten year old] juvenile had any developmental handicaps or other disabilities that might have impaired his ability to perceive the common and severe risks associated with fire").

The majority explains that, because the Legislature "deliberately entrusted to the trial court department most experienced with juveniles exclusive authority to issue harassment orders against them, it had young people's limitations and abilities particularly in mind," quoting from A.T. v. C.R., 88 Mass. App. Ct. 532, 539 (2015).  Ante at     . I agree and recognize the expertise of the Juvenile Court Department in this area.  However, we unfortunately have limited analysis here by the Juvenile Court judge, and the majority relies for the most part on cases involving adults, particularly to support the conclusion that the removal of A.P.'s clothes constitutes an indecent assault and battery and that M.T.'s flight confirms that he acted as a joint venturer in a sex crime.

---

presumed to know the nature and consequences of their acts; this is not always the case with children"); Northrop & Rozan, Kids Will Be Kids:  Time for a "Reasonable Child" Standard for the Proof of Objective Mens Rea Elements, 69 Me. L. Rev. 109, 112, 118 (2017) ("the juvenile code should be amended to explicitly refer to a reasonable child standard"; "[b]rain research tells us that a juvenile's deviation from an adult reasonable standard of behavior is not the indicator of a 'criminal mind' in the same way that it might be for an adult").

I also agree with the majority that "a defense of incapacity based on youth" is "inapplicable to current juvenile proceedings," quoting from Ogden O., 448 Mass. at 803. Ante at . This does not mean, however, that M.T.'s youth is not significant. I believe that M.T.'s young age should be more expressly taken into account, as age, including the difference between an eight year old child and a seventeen year old juvenile, is a relevant and important factor when determining whether conduct is indecent in this context.[5] Compare Miozza, 67 Mass. App. Ct. at 572.

---

[5] I also note that in the two most relevant juvenile cases, the evidence that a sex crime had occurred was significantly stronger than it is here. The majority relies in part on F.A.P., 87 Mass. App. Ct. at 595. Ante at . However, F.A.P. involved only one eleven year old boy, who had previously engaged in inappropriate touching with the seven year old victim. Id. at 596-597. Thus, it was reasonable to conclude that the boy committed a sex crime on the girl when, immediately after being alone with him, she was bleeding from her vaginal area, told her mother that he had "shoved his fingers up there," and told her not to tell anyone. Id. at 597. Here, by contrast, we know very little about what happened and, while there was a history of rough play, there was no history of sexual misconduct.

We also have much less evidence here than in A.T., supra at 540, in which this court affirmed a harassment prevention order against an eleven year old boy who committed three acts of wilful and malicious conduct against an eleven year old girl. See G. L. c. 258E, § 1. The boy stated in a video chat with the girl that he sometimes stares at her "big jugs of milk" during class. A.T., supra at 533. The boy later told the girl that he would "make her life a living hell" if she showed the video chat to anyone. Ibid. The boy also described a sexual fantasy about her to several classmates and, after their parents became involved, told the girl that he wanted to "punch [her] in the

The joint venture rationale is also complicated by M.T.'s very young age. Joint venture requires proof that the defendant "shared the intent to commit the crime." Commonwealth v. Montalvo, 76 Mass. App. Ct. 319, 330 (2010). See A.T., 88 Mass. App. Ct. at 538 ("The defendant's age, eleven, certainly is a factor in determining his intent"). In discerning such intent, we draw inferences from a defendant's collective actions, including flight evidencing consciousness of guilt. Nevertheless, the joint venture inferences that can be drawn from the actions of an adult or even a teenager differ from those that can be drawn from the actions of an eight year old child. See State v. Rice, 110 Ariz. 210, 212 (1973) (expressing "some doubts as to the capability of children of such tender ages as nine, ten or eleven to be accomplices"). Although the majority "acknowledge[s] that flight from the scene by young children may call for a different analysis from that of flight by adults," ante at    , the majority relies exclusively on cases involving adults in concluding that M.T. could be deemed a joint venturer.

I recognize that, in the instant case, there is some evidence to support the joint venture theory. The boys went to the house together, had engaged in rough play with A.P. on prior

---

titties." Id. at 534. Both children testified at the hearing about these events. Id. at 540.

occasions, and were seen running away together.  The mother "felt funny" about the way the boys turned and looked back at her as they ran away.  Although we do not know how or by whom A.P.'s clothes were removed, M.T. was present and stayed with the other boy throughout the incident.  Collectively, these are relevant factors, and they were appropriately considered by the Juvenile Court judge.  However, these factors must be considered in the context of M.T.'s age, as with our indecency analysis.  See A.T., 88 Mass. App. Ct. at 538.  Very different inferences can be drawn from a young boy running away when he knows he is going to be in trouble with his neighbor's mother than from an adult fleeing the scene of a crime.  See Commonwealth v. Ward W., 47 Mass. App. Ct. 208, 212 (1999) (fourteen year old fled, looking back at police cruiser many times; "[d]espite evidence of the juvenile's consciousness of guilt . . . and his association with people who may have committed armed robbery and carjacking . . . , the inference that the juvenile participated in the crime . . . is unwarranted").  The case law recognizes that even much older juveniles "lack the ability to extricate themselves from horrific, crime-producing situations." Diatchenko v. District Attorney for the Suffolk Dist., 466 Mass. 655, 660 (2013), S.C., 471 Mass. 12 (2015), quoting from Miller

v. <u>Alabama</u>, 567 U.S. 460, 471 (2012). The entire incident here also happened quickly, leaving little time for reflection.[6]

In sum, this is a very close case. M.T.'s young age significantly affects our analysis whether his actions were indecent and whether he acted as joint venturer. We also have limited guidance in the case law regarding such young offenders. Finally, we have large gaps in the evidence, specifically regarding what M.T. himself did. I nonetheless recognize that when all the evidence is considered, including the mud and the abrasions on A.P., the removal of her clothes, her distress, and the boys' flight, "together with all permissible inferences," <u>A.T.</u>, 88 Mass. App. Ct. at 535, there is sufficient evidence for

---

[6] I also interpret the mud on A.P.'s clothes and body differently from the majority. The majority describe the mud as being on the "crotch of her underpants and smeared over her bare feet and legs" and state that the boys "put her . . . on to the muddy ground." <u>Ante</u> at    . This depiction is, in my view, more forceful and sexual than I believe the photographs in and of themselves prove. The mud appears to be on A.P.'s bottom, which could have resulted from her sitting or playing in the mud, going down the backyard slide, or playing on the jungle gym, as she liked to do. Her mother testified that she enjoyed roughly playing with M.T. in the past, and that such rough play easily could have resulted in the mud on her clothes and body. A.P. was wearing a dress, and the mother also testified that she sometimes falls down and comes in muddy from playing outside. The judge did not make any specific findings with respect to the significance of the mud in the photographs; he merely stated that the photographs are "compelling." What conclusions they compel, however, is not clear to me given the very young age of the participants and their history of rough outdoor play. See <u>Commonwealth</u> v. <u>Bean</u>, 435 Mass. 708, 714 n.15 (2002) (fact finder in "no better position to evaluate the content and significance" of photographs).

a Juvenile Court judge to find by a preponderance of the evidence that M.T. committed an indecent assault and battery as a joint venturer.  The removal of A.P.'s clothes, in particular, indicates that something different from ordinary roughhousing occurred here.  I therefore agree that the harassment prevention order was properly issued and extended in this unique case.