NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1174

COMMONWEALTH

vs.

BIENVENIDO I. LUGO-MARCHANT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

At a trial in the District Court, a jury found the defendant guilty of indecent assault and battery on a person over the age of fourteen, in violation of G. L. c. 265, § 13H, based on an incident in which the defendant, a Lyft driver, moved his hand up the leg of a passenger in his car. After the close of the Commonwealth's case-in-chief, the defendant moved for a required finding of not guilty, which the judge denied. The defendant now appeals the judgment of conviction, arguing that the evidence was insufficient, the Commonwealth's closing argument was improper, and trial counsel rendered ineffective assistance. We affirm.

Discussion.  1.  Motion for required finding of not guilty.
We consider "whether, after viewing the evidence in the light
most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a
reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677
(1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).
Here, the defendant argues there was insufficient evidence for a
reasonable jury to find his touching was "indecent."  For a
defendant to be convicted of indecent assault and battery, the
Commonwealth must prove beyond a reasonable doubt that the
defendant "committed an intentional, unprivileged and indecent
touching of the victim."  Commonwealth v. Lavigne, 42 Mass. App.
Ct. 313, 315 (1997), quoting Commonwealth v. Mosby, 30 Mass.
App. Ct. 181, 184 (1991).

Whether touching is indecent depends on "contemporary moral
values" and "common understanding and practices" (quotation and
citation omitted).  Lavigne, 42 Mass. App. Ct. at 314.  Indecent
touching may include the touching of private areas such as "the
breasts, abdomen, buttocks, thighs, and pubic area of a female."
Mosby, 30 Mass. App. Ct. at 184-185, quoting Commonwealth v. De
La Cruz, 15 Mass. App. Ct. 52, 59 (1982).  The touching of
places on the body that are not considered "private areas" may
still "violate contemporary views of personal integrity and

2

privacy." Commonwealth v. Vazquez, 65 Mass. App. Ct. 305, 307 (2005). "When evaluating evidence of alleged indecent behavior, we consider all of the circumstances." Commonwealth v. Rosa, 62 Mass. App. Ct. 622, 626 (2004), quoting Commonwealth v. Castillo, 55 Mass. App. Ct. 563, 566 (2002).

During the first Lyft ride, the defendant picked the victim up at her home and dropped her off at her destination with no issue. But the defendant was assigned to the victim's return ride as well, and when he picked her up, about fifteen minutes after dropping her off, he asked her to sit in the passenger side back seat. He stated that he "like[ed] to see where [his] passengers are." Though the defendant had not made this request during the victim's first ride, she complied.

While the conversation started off casually, the defendant soon began to ask questions a reasonable jury could have considered to be sexual in nature. He asked the victim if she was married or had a boyfriend and if she liked bananas, which she interpreted as referring to male genitalia. The defendant then began "massaging the lower part of [the victim's] leg" with his hand and "gradually started moving up [her] . . . shin [until] he got to about [her] knee. . . . Then he just kept moving higher and higher." The defendant "got approximately mid-thigh." Then, the defendant asked, "[C]an I keep going[?],"

and started to move his fingers, at which point the victim jerked back and said, "no." Then, the defendant "slowly" removed his hand from the victim and drove her home.

We conclude that there was sufficient evidence for a reasonable jury to find that the defendant's touching was indecent. In arriving at this conclusion, we consider the context of the conversation with sexual undertones prior to the touching, the fact that the victim was trapped in a moving vehicle when the touching occurred, and the location of the touching on the victim's thigh. There was no error.

2. Closing argument. The defendant asserts that the prosecutor's closing argument impermissibly bolstered the victim's credibility by (1) referring to her as "the victim," (2) stating that she had no reason to lie, (3) arguing that it is common for victims of "these types of crimes" to "freeze" as the victim did here, and (4) misrepresenting the degree of certainty with which the victim's identification of the defendant. Where, as here, the defendant did not object at trial, we consider whether any error created a substantial risk of miscarriage of justice. See Commonwealth v. Randolph, 438 Mass. 290, 297 (2002). We consider the challenged statements "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial."

4

<u>Commonwealth</u> v. <u>Robidoux</u>, 450 Mass. 144, 162 (2007), quoting

<u>Commonwealth</u> v. <u>Passley</u>, 428 Mass. 832, 835 (1999).

The defendant first argues that the judge impermissibly allowed the Commonwealth to refer to the complaining witness as "the victim" in closing argument. While it is the "better practice" not to use the term "victim," there is no rule prohibiting its use. <u>Commonwealth</u> v. <u>Cadet</u>, 473 Mass. 173, 181 (2015). Here, on the defendant's motion, the judge prohibited the term's use during the presentation of testimony but specifically allowed the Commonwealth to use the term during closing argument. The judge also specifically instructed the jurors before closing arguments that the attorneys were not witnesses and that only evidence admitted through witness testimony and exhibits should be considered during their deliberations. "We assume a certain degree of jury sophistication (citation omitted)," <u>Cadet</u>, 473 Mass. at 181, so we can assume the jury understood that the prosecutor was not testifying that the complaining witness was in fact a victim but rather asking the jury to find that she was a victim. Any error in this regard created no substantial risk of miscarriage of justice.

The defendant next argues that the prosecutor's statement that the victim had "no motive to lie" or "to fabricate anything

against [the defendant]" was improper.  However, "[t]here is no categorical prohibition against suggestion by a prosecutor that a prosecution witness has no motive to lie," particularly where the defendant has attacked that witness's credibility. Commonwealth v. Helberg, 73 Mass. App. Ct. 175, 179 & n.5 (2008).  Here, on cross-examination, the defendant questioned the victim about why she did not call for help or resist, which called her credibility into question, and so the Commonwealth was permitted to make a fair response in closing argument.  See Commonwealth v. Smith, 450 Mass. 395, 408 (2008), cert. denied, 555 U.S. 893 (2008) (prosecutor permitted to make fair response to attack on credibility of government witness).  There was no error.

The defendant further asserts that it was improper for the prosecutor to state that "it's not uncommon for victims of these types of crimes to freeze or panic."  No evidence was admitted of what is common or uncommon of victims of this type of crime, and "a prosecutor should not . . . misstate the evidence or refer to facts not in evidence" in closing argument. Commonwealth v. Kozec, 399 Mass. 514, 516 (1987).  Although the Commonwealth suggests that the prosecutor was permitted to call on the jury to apply their common experiences to consider what they may have done in a similar situation, "[t]he jury should

6

not be asked to put themselves 'in the shoes' of the victim." Commonwealth v. Bizanowicz, 459 Mass. 400, 420 (2011). Even so, the prosecutor described the victim's response as "not uncommon" only once during closing argument, and the judge gave the specific instruction, described above, that closing arguments are not evidence. We conclude that any error created no substantial risk of miscarriage of justice.

The defendant finally argues that the prosecutor improperly overstated the victim's degree of certainty about her identification of the defendant. We are unpersuaded. The prosecutor first stated that the victim said she was "pretty sure" that the person she picked from the photo array was the perpetrator. This was properly based on the detective's testimony that the victim had said she was "pretty sure this []is him." The prosecutor next stated that the victim, despite having sat behind the perpetrator, "was able to come [to the police station] a week later, point to one picture out of the eight, and say, that's him." Although this omitted the "pretty sure" language, the prosecutor had just quoted that same language a moment earlier. The prosecutor next stated, accurately, that "[a]t no point was she confused about anyone else in the array." The prosecutor finally stated (again accurately) that, despite the victim's having been informed that

7

the perpetrator's photo might not be in the array, "she still chose him," meaning the photo of the defendant. We are confident that nothing in this argument misstated the evidence or misled the jury about the victim's degree of certainty of her identification of the defendant. Additionally, the judge gave the jury extensive instructions on how to evaluate identification testimony, including an instruction on how to evaluate the witness's expressed degree of certainty. It was within the purview of the jury to determine the weight of the identification evidence. Thus, there was no error.

3. Ineffective assistance of counsel. The defendant argues he was deprived of effective assistance because counsel failed to (1) move to suppress the out-of-court identification of the defendant from the photo array and (2) conduct his own independent investigation of the case. To prevail on a claim of ineffective assistance of trial counsel, a defendant must establish that counsel's performance fell "measurably below that which might be expected from an ordinary fallible lawyer" and "likely deprived the defendant of an otherwise available, substantial ground of defence." Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). "[T]he preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial." Commonwealth v. Zinser, 446 Mass. 807, 810

8

(2006). Such a motion was not filed in this case. Instead, the defendant appeals based on "the trial record alone[,] . . . the weakest form of such a challenge because it is bereft of any explanation by trial counsel for his actions." Commonwealth v. Peloquin, 437 Mass. 204, 210 n.5 (2002).

Where an ineffective assistance claim is based on the failure to file a motion to suppress, the defendant must "demonstrate a likelihood that the motion to suppress would have been successful." Commonwealth v. Comita, 441 Mass. 86, 91 (2004). For an out-of-court witness identification arranged by police to be suppressed, the defendant must prove "by a preponderance of the evidence, considering the totality of the circumstances, that the identification is so unnecessarily suggestive and conducive to irreparable misidentification that its admission would deprive the defendant of his right to due process." Commonwealth v. Walker, 460 Mass. 590, 599 (2011).

Here, the detective conducted the identification procedure properly; among other things, he did not know the identity of the suspect, he informed the victim that the wrongdoer may not be in the photo array, and the photo array included seven filler photos. See Walker, 460 Mass. at 604; Commonwealth v. Silva-Santiago, 453 Mass. 782, 797 (2009). Because the defendant failed to demonstrate that a motion to suppress would have been

9

successful, based on the record before us, we cannot say that trial counsel performed deficiently by not filing such a motion. See Saferian, 366 Mass. at 96.

Second, the defendant argues that counsel failed to conduct an independent investigation of the case. See Commonwealth v. Baker, 440 Mass. 519, 529 (2003) (counsel has duty to conduct independent investigation of the facts). The defendant does not point to any specific fact that might have been uncovered by further investigation that could have benefited him. The record before us does not include an affidavit from trial counsel or any other evidence of failure to conduct an independent investigation. Because the defendant has failed to establish that counsel's performance was deficient, we need not reach the prejudice prong of the Saferian analysis in order to reject, as we do, the defendant's ineffective assistance claim.

Judgment affirmed.

By the Court (Meade, Sacks & Hodgens, JJ.[1]),

Clerk

Entered: February 14, 2025.

---

[1] The panelists are listed in order of seniority.

10